**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 13 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLES ROBERTS,

     Plaintiff-Appellee/Cross-
     Appellant,

v.

PROGRESSIVE INDEPENDENCE,
INC., an Oklahoma corporation,
SHARON JOHNSON, in her capacity
as Executive Director of Progressive
Independence, and JOHNNY
HOBAUGH, MELVIN HALL,
GLENN HARING, ROBERT
VANHOOZER, and ERVIN KEITH,
in their capacity as members of the
Board of Directors of Progressive
Independence, Inc.,

     Defendants-Appellants/Cross-
     Appellees.

Nos. 98-6062, 98-6098

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-96-1850-L)**

---

Douglas A. Rice (Gladys E. Cherry with him on the briefs) of Derryberry,
Quigley, Solomon & Naifeh, Oklahoma City, Oklahoma, for Plaintiff-Appellee/
Cross-Appellant.

George M. Emerson of Riggs, Abney, Neal, Turpen, Orbison, & Lewis, Oklahoma
City, Oklahoma, for Defendants-Appellants/Cross-Appellees.

Before **SEYMOUR**, Chief Judge, **MAGILL**[*] and **EBEL,** Circuit Judges.

**EBEL**, Circuit Judge.

Charles Roberts brought two claims against Progressive Independence, Inc., and its director and board members (collectively, "PI"), under the Rehabilitation Act ("Act"): (1) wrongful termination; and (2) failure to provide reasonable accommodation for a trip to a business conference in Miami, Florida. The district court granted PI summary judgment on the wrongful termination claim, and a jury awarded Roberts $85,000 under the reasonable accommodation claim. PI appeals, and Roberts cross-appeals. We affirm in part, reverse in part, and remand.

## BACKGROUND

Roberts is a thirty-three year old man with cerebral palsy. Because of his disability, Roberts must use a motorized wheelchair and requires assistance in meeting his daily needs. Such assistance includes lifting Roberts in and out of his wheelchair, feeding and dressing him, and aiding him in using the bathroom and

---

[*]Honorable Frank Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

maintaining personal hygiene.  To meet these needs, Roberts uses the services of personal care attendants ("PCAs") for approximately six hours per day.

PI qualifies as an independent living center under the Rehabilitation Act.  It offers services to, and advocates training for, the disabled.  It is funded through federal and state programs, and at the relevant time employed five persons, all of whom were disabled.  Sharon Johnson is the executive director of PI; the remaining defendants are members of PI's board of directors.

Roberts began working for PI in January of 1995 as an assistive technology assistant.  On the morning of April 24, 1996, Johnson informed Roberts that he would be required to attend a conference sponsored by the National Industries for the Severely Handicapped Conference, which was to be held in Miami, Florida, from April 27 through May 1, 1996.  Johnson asked Roberts to prepare a memorandum detailing his needs for the trip.[1]

Later in the day, Roberts submitted to Johnson a memorandum detailing the following needs:

Personal Care

1. External catheter applied daily
    This is my main concern.  If it is not applied
    appropriately accidents <u>will</u> occur.  The attendant should
    be highly used to applying this assistive technology.

_____

[1]Anita Hensley, another PI employee, would be traveling with Roberts; however, she would not be responsible for any of his attendant care.

Sterility and proper cleaning procedures should be implemented for cross infection control.

2. Dressing/undressing.
3. Total shower assistance/shower chair
4. Apply pacemaker antenna/change batteries
5. Assistance with cleaning after bowel movements
6. Get out proper medication (I can take it myself)
7. Feeding at meals
8. Transportation
9. Charging chair
10. Shaving/teeth brushing

Wheelchair Information:

I have contacted Veazey, my vendor. Airlines do not allow chairs on board that they are aware. They usually disassemble chairs and crate them. Damage usually occurs so insurance should be considered.

After reviewing this memo, Johnson suggested two hours of attendant care each morning and two hours each evening, which Roberts agreed was satisfactory. While Roberts was in Johnson's office, she spoke with the Visiting Nurses Association (VNA) in Florida.[2] Johnson indicated to the VNA that she would finalize plans the next day while on the plane (via telephone) or once she was in Miami.

---

[2]There is conflicting testimony on this point. According to Roberts, he only came into Johnson's office because he was advised that "someone wanted my birthday and social security number." Roberts gave that information over a speaker phone without knowing to whom he was talking, and then immediately left Johnson's office. However, Johnson testified that the VNA also queried Roberts about his disability, and that Johnson reviewed Robert's memo with the VNA before the conversation terminated and Roberts left.

Later in the day, Roberts tried to find out more about the details of his care, but was advised by Johnson that she did not have any time for questions or comments. Lacking additional information about his care, Roberts grew anxious that evening, and decided that the best way to ensure adequate care was to take his own PCA with him on the trip. To that end, Roberts arranged for Pat Collins, his PCA, to accompany him, making airline reservations for her on his flight to Miami.

The next morning, April 25, Roberts presented Johnson an additional memo regarding his trip. The memo stated, in pertinent part:

> From all formal information in this 24 hours it is obvious from any person with a disability I have not received personal peace of mind that this will meet my standards. I cannot feel comfortably safe with a strange attendant performing the necessary tasks. I have arranged for my personal care attendant, who is familiar with my own needs, to attend to me during these conference days. Time did not permit you to allow me the opportunity to discuss this with you after my memo dated April 24th regarding my requirements for the trip. I attempted to do so but you indicated that you do not have time for questions.
>
> Although we did discuss the Miami attendant to be with me two hours in the morning and two hours in the evening to ensure that my safety and personal needs will be met satisfactorily throughout the day I feel more attendant care is needed. My independent skills have proven that several experiences with me are necessary before an attendant gives adequate minimum care.
>
> I am respectfully requesting that funds allocated towards the Home Health Agency in Miami be reallocated to Patricia Collins. This can be done after May 1, 1996.

After reading the memo, Johnson either told Roberts that it was unacceptable, or that PI would not be paying for Roberts' attendant to fly. In any event, Roberts testified that Johnson told him that "you can go on my terms or be terminated," and he responded, "I guess I am terminated."

Roberts then went to a nearby business. Johnson found him and Roberts testified that she told him, "[Y]ou need to give me the keys to the office or come back." Roberts gave Johnson the keys. Later that day, Roberts returned to PI's offices with his parents to retrieve his personal belongings.

Roberts filed a formal grievance with PI that was heard by a committee composed of certain PI board members. The committee found that the accommodations Johnson offered were sufficient, denied Roberts' grievance, and found that he was not terminated or constructively discharged, but rather resigned. Roberts appealed to the full board, which upheld the decision and declined to reinstate him.

Roberts then filed a complaint in federal district court. He alleged two causes of action under § 504 of the Rehabilitation Act, 29 U.S.C. § 794: (1) failure of PI to provide reasonable accommodation for the Florida trip; and (2) unlawful termination because of Roberts' inability to make the trip under the terms and conditions required by PI.

Subsequently, PI moved for summary judgment. The court granted summary judgment on the termination claim, because Roberts could not establish that his termination "was based solely on his disability," as required under the Act. However, the court denied summary judgment on the reasonable accommodation claim, finding there were "genuine issues of material fact with respect to the reasonableness of the accommodations offered by Johnson."

Roberts then filed an application for reconsideration or rehearing of the court's order on summary judgment, which the court considered along with PI's motion for judgment on the pleadings. The court denied both motions. With respect to PI's motion, the court rejected PI's contention that the granting of summary judgment on the wrongful termination claim rendered the reasonable accommodation claim moot.

The reasonable accommodation claim was tried to a jury. Before the verdict, both sides moved for judgment as a matter of law under Fed. R. Civ. P. 50. The court denied the motions, and the jury subsequently returned a verdict in favor of Roberts for $85,000 in compensatory damages. PI then renewed its Rule 50 motion for judgment as a matter of law or, in the alternative, remittitur. PI inter alia reasserted that the court's granting of summary judgment on the termination claim made the reasonable accommodation claim moot, and also

argued that there was insufficient evidence to support the jury's liability determination. The court denied the motion.

PI appeals from the jury verdict rendered in favor of Roberts, and from the district court's denial of PI's motion for judgment as a matter of law or remittitur. Roberts cross-appeals from the court's entry of summary judgment in favor of PI on the wrongful termination claim. Both sides also appeal the district court's denial of various requested jury instructions.

## DISCUSSION

The district court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We address, in turn, the issues of reasonable accommodation, wrongful termination, jury instructions, and remittitur.

### I. Reasonable Accommodation

PI argues that the district court's grant of summary judgment in its favor on Roberts' wrongful termination claim rendered his reasonable accommodation claim moot, and hence entitled him to judgment as a matter of law on the

reasonable accommodation claim. PI raised this argument in a motion for judgment on the pleadings filed after summary judgment, and renewed it in motions for judgment as a matter of law before and after the verdict. The district court denied the motions.

"We review the district court's denial of a renewal motion for judgment as a matter of law de novo, applying the same standards as the district court. We must affirm if, viewing the record in the light most favorable to [the non-movant], there is evidence upon which the jury could properly return a verdict for [the non-movant]." Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546 (10th Cir. 1996) (citation omitted). In conducting our review, "[w]e do not weigh the evidence, pass on the credibility of witnesses, or substitute our own conclusions for that of the jury. However, we must enter judgment as a matter of law in favor of the moving party if 'there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law.'" Id. (citation omitted) (quoting Fed. R. Civ. P. 50(a)).

PI argues that it was entitled to judgment as a matter of law because: "1) PI had no obligation to provide reasonable accommodations for a job to be performed on April 27, 1996, when Roberts was no longer employed [as of April 27]; and, 2) PI is not required to provide reasonable accommodations to Roberts on or before April 25, 1996 [the date Roberts was terminated], because the

accommodations were not yet needed to perform the job functions on April 27, 1996."

We disagree with PI's logic and conclusion. PI's former employee argument (argument 1) and future accommodations argument (argument 2) are flawed because both rest on the premise that an employer need provide reasonable accommodation under the Act only <u>at the moment</u> such accommodation is needed, and that employment relations can be broken down into discrete and isolated time references without considering the reality that events are interconnected.[3] This

---

[3]The duty to make reasonable accommodation under § 504 of the Rehabilitation Act is explicitly stated in the Justice Department regulation implementing § 504 of the Act:

> A recipient [of federal financial assistance] <u>shall</u> make <u>reasonable accommodation</u> to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

28 C.F.R. § 41.53 (emphasis added); <u>see</u> <u>Smith v. Midland Brake, Inc.</u>, No. 96-3018, 1999 WL 387498, at *25 n.4 (10th Cir. June 14, 1999) (en banc). The Justice Department, pursuant to an executive order, took over responsibility for implementing and enforcing § 504, and its regulations remain in force today. <u>See</u> <u>Bragdon v. Abbott</u>, 118 S. Ct. 2196, 2203 (1998).

Additionally, § 504(d) provides that "[t]he standards used to determine whether this section has been violated . . . shall be the standards applied under title I of the Americans with Disabilities Act . . . ." Tile I of the ADA defines discrimination to include:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a

(continued...)

- 10 -

premise runs contrary to logic and our precedent, which refers to the term

"reasonable accommodation" as "those accommodations which presently, or in the

near future, enable the employee to perform the essential functions of his job."

Hudson v. MCI Telecoms. Corp., 87 F.3d 1167, 1169 (10th Cir. 1996) (emphasis

added) (citing Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995)); accord Duckett

v. Dunlop Tire Corp., 120 F.3d 1222, 1226 (11th Cir. 1997) (quoting Myers);

Rogers v. International Marine Terminals, Inc., 87 F.3d 755, 760 (5th Cir. 1996)

(quoting Myers); McDonald v. Commonwealth of Penn., 62 F.3d 92, 97 (3d Cir.

1995) (quoting Myers).[4]  Moreover, under PI's reasoning, an employer could

escape liability for failure to provide reasonable accommodation by terminating

employment before the exact moment accommodation is needed.  This absurd

result vitiates PI's interpretation of the duty to make "reasonable

accommodation."

---

[3](...continued)
disability who is an applicant or employee, unless such covered
entity can demonstrate that the accommodation would impose an
undue hardship on the operation of the business of such covered
entity.

42 U.S.C. § 12112(b)(5)(A).  This provision of the ADA is "directly analogous"
to 28 C.F.R. § 41.53.  See Smith, 1999 WL 387498, at *25 n.4.

[4]Although all these cases except McDonald interpret the duty to reasonably
accommodate under the ADA rather than the Rehabilitation Act, "[c]ases decided
under section 504 of the Rehabilitation Act are . . . applicable to cases brought
under the ADA and vice versa."  Woodman v. Runyon, 132 F.3d 1330, 1339 n.8
(10th Cir. 1997).

Therefore, the district court did not err in denying judgment as a matter of law on the reasonable accommodation claim even though it found Roberts' termination lawful. Regardless of whether the termination was lawful,[5] PI had a duty to reasonably accommodate Roberts for the Florida trip while he was still an employee. The trip was only two days away when Roberts was terminated, and hence was within the "near future" for which PI had to provide reasonable accommodation.

PI additionally claims entitlement to judgment as a matter of law because "the jury must speculate about the reasonableness of the accommodations," as the accommodations were still being developed at the time Roberts was terminated on April 25, and would not be finalized until Johnson was on the plane later that day or in Miami—two days before Roberts was to arrive.

We believe there was sufficient evidence upon which the jury could properly return a verdict for Roberts. While Johnson had not planned or finalized all the accommodations for Roberts' trip, she had determined that he would receive four hours of attendant care per day—two in the morning and two in the evening. In fact, Johnson locked in that aspect of accommodation without any flexibility, demanding that Roberts "go on [Johnson's] terms or be terminated."

_____

[5]As discussed infra Part II, we believe that there was a genuine issue of material fact as to whether the termination was lawful, and that it was error to grant summary judgment to PI on that issue.

The evidence also revealed that Roberts told Johnson in his follow-up memo that he needed more than those four hours of care, and from someone experienced with assisting him, in order to ensure his safety and personal needs. Roberts was also being forced to commit to an arduous and potentially dangerous trip with inadequate planning and substantial uncertainties. Viewing the record in the light most favorable to Roberts, we conclude that the jury properly could find PI did not make reasonable accommodation for the trip.

Accordingly, we affirm the district court's denial of PI's motion for judgment as a matter of law.

## II.  Wrongful Termination

In his cross-appeal, Roberts contends that the district court erred in granting summary judgment for PI on the wrongful termination claim on the ground that he failed to establish his termination was based solely on his disability.  We agree with Roberts.

> We review the grant of summary judgment de novo, using the same standard applied by the district court.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.

Universal Money Ctrs. v. AT&T, 22 F3d 1527, 1529 (10th Cir. 1994).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, <u>solely</u> by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added). Thus,

> in cases arising under § 504 of the Rehabilitation Act, a plaintiff may establish a prima facie case of discrimination by showing (1) he is a disabled person; (2) he was otherwise qualified apart from his handicap, i.e., with or without reasonable accommodation, he could perform the job's essential functions; and (3) he was terminated under circumstances which give rise to an inference that his rejection was based <u>solely</u> on his disability.

<u>Williams v. Widnall</u>, 79 F.3d 1003, 1005 (10th Cir. 1996) (emphasis added).

Relying on <u>Williams</u>, the district court concluded at summary judgment that Roberts "cannot establish that his termination 'was based <u>solely</u> on his disability'" because Roberts was discharged for his misconduct of refusing to go to Miami rather than his disability. We disagree with that conclusion.

Roberts' wrongful termination claim depends entirely on whether PI offered him reasonable accommodation for the Florida trip. If PI failed to offer reasonable accommodation for the trip, Roberts cannot be faulted under the circumstances for refusing to attend. On the other hand, if PI offered Roberts reasonable accommodation, then Roberts' refusal to go on the trip was not

- 14 -

protected under the Act, and consequently PI did not wrongfully terminate Roberts for his refusal. Viewed most favorably to Roberts, the evidence at summary judgment—including the amount of attendant care Roberts was to receive in Florida, and the uncertainty in plans he was required to accept—could support the conclusion that Roberts' refusal to go on the trip was solely because PI failed to offer reasonable accommodation to him in connection with the trip. Under that interpretation, Roberts' termination was solely because of his disability and, therefore, wrongful under the Act.

Given the evidence at summary judgment, the district court properly found that there were genuine issues of material fact regarding whether the accommodations PI offered Roberts were reasonable. Given the disputes of material fact regarding reasonable accommodation, the district court also should have found genuine issues of material fact regarding the wrongful termination claim. Thus, we reverse its grant of summary judgment for PI on Roberts' wrongful termination claim.

### III. Requested Jury Instructions

"The admission or exclusion of a particular jury instruction is within the sound discretion of the trial court. We review the trial court's conclusions on

legal issues de novo, however, and need not defer to its decisions on questions of law." Okland Oil Co. v. Conoco, Inc., 144 F.3d 1308, 1324 (10th Cir. 1998).

## A. Good Faith Efforts Instruction

PI appeals the district court's denial of its proposed good faith efforts instruction pursuant to 42 U.S.C. § 1981a(a)(3). PI presented this issue by making timely objections below. However, we find no error in the district court's refusal to give such an instruction.

Section 1981a provides compensatory and punitive damages for actions brought under § 706 or § 717 of Title VII of the Civil Rights Act of 1964 against entities who engaged in unlawful intentional discrimination under 29 U.S.C. § 791 (§ 501 of the Rehabilitation Act), or § 42 U.S.C. § 12112 (§ 102 of the ADA). See 42 U.S.C. § 1981a(a)(2). Notably, § 1981a(a)(2) does not provide

damages for violations of 29 U.S.C. § 794 (§ 504 of the Rehabilitation Act).[6]  In

addition, § 1981a(a)(3) provides:

> In cases where a discriminatory practice involves the provision of a reasonable accommodation pursuant to section 102(b)(5) of the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12112(b)(5)] or regulations implementing section 791 of Title 29, damages may not be awarded under this section where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

Id. (emphasis added).

The district court properly denied PI's request for a good faith efforts

instruction.  By its express terms, § 1981a(a)(3)'s good faith efforts exception

applies to § 102(b)(5) of the ADA and regulations implementing 29 U.S.C. § 791.

Section 1981a(a)(3) does not list § 29 U.S.C. § 794—under which Roberts

brought suit—as a provision to which the good faith efforts exception applies.

---

[6]In fact, there is no explicit Congressional provision for a private right of action for a violation of § 504 of the Rehabilitation Act.  Although 29 U.S.C. § 794a(a)(2) provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act . . . under section 794 of this title," id., "Title VI of the Civil Rights Act, like § 504 of the Rehabilitation Act, is silent on the availability of a private cause of action and private remedies," Moreno v. Consolidated Rail Corp., 99 F.3d 782, 788 (6th Cir. 1996) (en banc).  However, courts have held that a private right of action exists under § 504.  See Pushkin v. Regents of the Univ. of Colorado, 658 F.2d 1372, 1380 (10th Cir. 1981); Moreno, 99 F.3d at 789.

This is unsurprising, as § 794 is not included among the provisions for which § 1981a(a)(2) permits the recovery of compensatory and punitive damages. Congress did not write § 794 into the damages scheme of § 1981a, and we refuse to do so through creative statutory construction. Cf. Williams, 79 F.3d at 1005-06 (refusing to apply exemption of 29 U.S.C. § 706(8)(C)(v) to actions brought under 29 U.S.C. § 791, when § 706(8)(C)(v) expressly applies to 29 U.S.C. §§ 793 & § 794). Furthermore, as we explained in Williams, "it would be perverse to any rule of statutory interpretation to extend a specific exclusion limited to two expressly named sections to a third unnamed section." Williams, 79 F.3d at 1006 (quoting Crewe v. United States Office of Personnel Management, 834 F.2d 140, 142 (8th Cir. 1987)). Accordingly, we affirm the district court's refusal to provide a good faith efforts instruction pursuant to § 1981a(a)(3) for Roberts' action under § 504 of the Rehabilitation Act.

## B. Punitive Damages Instruction

Roberts asserts that the district court erred in denying his request for a punitive damages instruction, claiming that PI "acted with malice or reckless indifference to Roberts' protected rights." However, the district court ruled against giving the instruction, concluding "that there's not sufficient evidence in this case to allow the punitive damages issue to go to the jury." Without deciding

whether punitive damages are available under § 504, compare Moreno v. Consolidated Rail Corp., 99 F.3d 782, 789 (6th Cir. 1996) (en banc) (punitive damages unavailable under § 504) with Pandazides v. Virginia Bd. of Educ., 13 F.3d 823, 830 (4th Cir. 1994) (§ 504 provides "full panoply of damages"), we find no error in the district court's refusal to give the instruction because of insufficient evidence. This insufficiency precludes a punitive damages instruction even if such damages were available under § 504.

## IV. Remittitur

PI additionally contends that the district court erred as a matter of law in failing to reduce the jury's award on the reasonable accommodation claim from $85,000 to $50,000 pursuant to a damages cap in 42 U.S.C. § 1981a(b)(3). PI also contends that the district court erred in denying its request for remittitur because there was no evidence to support the jury's award of $85,000. We reject both arguments.

With regard to the first argument, we do not believe the district court erred as a matter of law in failing to apply the damages cap. Section 1981a(b)(3) establishes damages caps for "compensatory damages awarded under this section," including a $50,000 cap "in the case of a respondent who has more than 14 or fewer than 101 employees." 42 U.S.C. § 1981a(b)(3) (emphasis added).

- 19 -

For the same reason we affirmed the district court's denial of the good faith efforts instruction, we affirm its refusal to reduce the jury's award pursuant to § 1981a(b)(3): the plain language of § 1981a (the section for which § 1981a(b)(3) provides a damages cap) applies to damages under 29 U.S.C. § 791 but not 29 U.S.C. § 794. See Moreno v. Consolidated Rail Corp., 63 F.3d 1404, 1415 (6th Cir.) ("[I]n the Civil Rights Act of 1991, 42 U.S.C. § 1981a, Congress placed caps on damages for causes of action brought pursuant to section 501 [29 U.S.C. § 791], but not section 504, of the Rehabilitation Act of 1973 . . . ."), rev'd en banc on other grounds, 99 F.3d 782 (1996).

We also uphold the district court's denial of remittitur despite PI's claim that there was insufficient evidence to support the jury award of $85,000 for PI's failure to reasonably accommodate Roberts. "The trial court's denial of a motion for remittitur is entitled to considerable deference on appeal. We will not disturb this determination absent a gross abuse of discretion." Sheets v. Salt Lake County, 45 F.3d 1383, 1390 (10th Cir. 1995). We will find such abuse only if "the jury award is so excessive . . . as to shock the conscience and to raise an irresistible inference that passion, prejudice, corruption or another improper cause invaded the trial." Id. (quotations omitted).

We believe there was sufficient evidence to support the jury award. Although PI "fails to understand Roberts' claim for damages from a failure to

accommodate that never materialized," we have concluded that PI had a duty reasonably to accommodate Roberts on the trip while he was still an employee, and that there was sufficient evidence to enable a jury to find that PI failed reasonably to accommodate Roberts in connection with the planned trip to Florida. As for evidence of damages, Roberts testified that the events of April 24th and 25th—which would encompass both the failure to reasonably accommodate and the termination—led to subsequent pain and suffering on his part. Additionally, Roberts' doctor testified that, when he examined Roberts on October 23 of the same year, Roberts had developed abdominal problems and stress for many months as a result of "being affected with his work relationship"—in particular both the inadequate accommodations and the termination. Given this evidence that PI's failure to reasonably accommodate contributed in part to Roberts' subsequent physical and emotional troubles, the jury's award does not shock our conscience, and we affirm the district court's denial of remittitur.

However, we hold that Roberts will not be entitled to any additional damages for pain and suffering on his wrongful termination claim. As Roberts' doctor testified, and as Roberts' counsel acknowledged at oral argument, Roberts' physical and emotional damages from both the failure to accommodate and the termination were inextricably linked. Thus, with respect to pain and suffering

damages, we believe the jury award for the reasonable accommodation claim is coextensive with any award Roberts might receive for his wrongful termination claim. On remand, therefore, if Roberts were to prevail on the wrongful termination claim, he will not be entitled to recover additional damages for physical and emotional harm, as such damages would duplicate the jury award for the reasonable accommodation claim. Of course, Roberts would be entitled to damages arising solely from the termination, such as front pay and back pay. We are confident those damages would not be duplicative because the district court specifically instructed the jury not to consider "any damages that you find arise solely as a result of [plaintiff's] termination," such as "wages and benefits."

## CONCLUSION

We AFFIRM the district court's denial of PI's motion for judgment as a matter of law on Roberts' reasonable accommodation claim. We REVERSE the district court's grant of summary judgment for PI on Roberts' wrongful termination claim. We AFFIRM the district court's refusal to instruct the jury on the good faith efforts defense and on punitive damages. We AFFIRM the district court's denial of remittitur. We REMAND for further proceedings on Roberts' wrongful termination claim consistent with this opinion.