Wayne **HILER**, Plaintiff–Appellee,

v.

Jesse **BROWN**, Secretary of Veterans Affairs, officially, Defendant,

**J.C. Watkins**, Maintenance and Operations General Foreman; **Robert Wiedo**, Assistant Director of Engineering Services; **Larry Kuzma**, Chief Director of Engineering Services, individually, Defendants–Appellants.

No. 98–5014.

United States Court of Appeals, Sixth Circuit.

Argued March 17, 1999.

Decided and Filed May 20, 1999.

Richard A. Olderman (argued and briefed), U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Appellants.

Eugene F. Mooney (argued and briefed), MOONEY, MOONEY & MOONEY, Lexington, Kentucky, for Appellee.

Before: BOGGS, CLAY, and GODBOLD *, Circuit Judges.

CLAY, Circuit Judge.

Defendants–Appellants, J.C. Watkins, Robert Wiedo, and Larry Kuzma, supervisors at the United States Department of Veterans Affairs Medical Center ("Veterans Administration"), appeal the district court's denial of their motion for summary judgment on Plaintiff Wayne Hiler's claim of retaliation under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–794a (1994). Defendants allege that the district court erroneously denied their claim for qualified immunity, as the Rehabilitation Act does not create a private cause of action against supervisors in their individual capacities for retaliation. Hence, Defendants maintain that they are immune from personal liability for alleged retaliation under the Rehabilitation Act. For the reasons set forth below, we agree and REVERSE the district court's decision.

## I.

Plaintiff Wayne Hiler, a veteran of the armed forces, served as a tank commander in the United States Army during the Vietnam War. During his military tour, Hiler sustained arm and head injuries and as a consequence now labors under brain and neurological damage that impairs many of his major life activities, including self-care and employment. Hiler suffers from aphasia, impairment of his handwriting ability, and an assortment of other physical limitations.[1]

Since January 23, 1994, Hiler has been employed as a pipefitter at the Veterans Administration in Lexington, Kentucky. Despite his disability, Hiler has successfully performed his duties as a pipefitter and is a certified Wastewater Operator, licensed High Pressure Boiler Operator, certified Construction Representative, a certified Backflow Tester, and a certified Refrigeration Technician. Hiler, who was previously employed as a supervisor at other companies, applied on nine occasions for seven vacant supervisor positions at the Veterans Administration.[2] Hiler was not selected for any of the positions for which he applied, however, because candidates were evaluated, in part, by their performance on timed written examinations. Specifically, candidates were required to handwrite their resume spontaneously in ten minutes, and to handwrite responses to verbal questions under time pressures.

Because Hiler's disability impairs his ability to commit his thoughts to paper quickly, he objected to the use of the written examinations to test his qualifications as a supervisor. His disability does not affect his capacity to make immediate spontaneous responses verbally, by typewriter, or electronically by computer. Regardless, the interviewers refused to eliminate or modify the testing procedures, or to otherwise accommodate Hiler's disability.

Three of Hiler's supervisors, J.C. Watkins, Robert Wiedo, and Larry Kuzma, were actively involved in the selection process for the management positions that he sought. Generally, Watkins, the Mainte-

---

* The Honorable John C. Godbold, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. Hiler submits that he has a 70% disability from the loss of his left arm above the elbow, 60% disability from traumatic brain damage, 50% disability from skull damage, and 10% disability from damage to his eye. (J.A. at 42). However, he attests that his disability does not interfere with his ability to observe, think, or make decisions immediately and correctly under time pressures, and does not interfere with his ability to write in his own handwriting while not under time constraints.

2. Hiler applied for (i) Motor Vehicle Operator Supervisor; (ii) Motor Vehicle Operator Supervisor # 2; (iii) Utility Systems Operator Supervisor; (iv) Construction Representative; (v) Engineering Technician; (vi) Maintenance Supervisor of Machine/Plumbing; and (vii) Maintenance Supervisor of Buildings Maintenance and Repair.

nance and Operations General Foreman, was the interviewing official, Wiedo, the Assistant Director of Engineering Services, was the concurring official, and Kuzma, the Chief Director of Engineering Services, was the selecting official. Watkins interviewed Hiler on five occasions, and Wiedo interviewed Hiler once. Because Hiler's performance on the written examinations was inferior to the performance of other candidates, Watkins and Wiedo did not recommend Hiler as a supervisor, and Hiler's applications were consequently rejected by Kuzma.

After exhausting his administrative remedies, Hiler filed suit in the district court on February 14, 1997, against Jesse Brown, Secretary of Veterans Affairs, in his official capacity, and his supervisors, in their official and individual capacities, for disability discrimination, failure to accommodate, and retaliation.[3] Hiler's complaint, which was subsequently amended, asserted that the defendants violated the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794 (1994), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981a (1994), the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12203 (1994), and the Kentucky Civil Rights Act, Ky.Rev.Stat. Ann. § 344.280 (Baldwin 1994). In response, the defendants filed a joint motion to dismiss and motion for summary judgment on July 3, 1997, claiming, among other things, that (i)

the district court should dismiss the claims against all defendants in their official capacities, on grounds that they are not the proper party defendants; and that (ii) the Rehabilitation Act's anti-retaliation provision does not create a private right of action against supervisors in their individual capacities.

Prior to discovery, the district court issued an opinion and order on November 25, 1997, finding in relevant part, that Hiler could not maintain a disability discrimination claim against his supervisors, in their official capacities, under the Rehabilitation Act since by statute the only proper defendant is the head of the Veterans Administration, Defendant Brown. The district court determined, however, that Hiler could maintain his retaliation claim against his supervisors in their individual capacities, and thereafter denied the supervisors' claim for qualified immunity. The district court therefore permitted Hiler to pursue his disability discrimination claim against Defendant Brown in his representative capacity, and his retaliation claim against his supervisors in their individual capacities. Hiler's supervisors filed a timely notice of appeal to this Court on December 24, 1997, placing before this Court the narrow issue of whether the Rehabilitation Act creates a private cause of action against supervisors, in their individual capacities, for alleged retaliatory employment practices.[4]

---

**3.** Between November 1994 and October 1996, Hiler filed six EEOC complaints alleging disability discrimination, refusal to accommodate, and/or retaliation.

**4.** Insofar as the merits of Hiler's claim are concerned, the district court determined that his supervisors personally devised, and administered the handwriting tests that allegedly violated the Rehabilitation Act even after Hiler voiced objections and filed administrative complaints. The district court determined that the facts alleged in the complaint "support a finding that defendants violated Hiler's clearly established rights," and that material issues of fact remained as to whether Hiler's supervisors retaliated against him for objecting and filing complaints about the alleged disability discrimination. Because we

conclude that supervisors are not personally liable in damages for retaliation under the Rehabilitation Act, we have no jurisdiction to review the merits of Hiler's retaliation claim.

The district court dismissed Hiler's ADA claim, however, because the ADA does not govern alleged discriminatory or retaliatory acts by the federal government. Under the ADA, the term "employer" does not encompass the United States, a corporation wholly owned by the United States, or an Indian tribe. See 42 U.S.C. § 12111(5)(B)(i) (1994). Hence, an aggrieved federal employee alleging disability discrimination or retaliation can only seek monetary or equitable relief under the Rehabilitation Act.

In a separately issued opinion and order, dated March 20, 1998, the district court determined that the Kentucky Civil Rights Act,

## II.

■ This Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1291. A district court's order denying qualified immunity is immediately appealable as a final judgment within the meaning of § 1291 insofar as the appeal raises purely legal, rather than factual, issues. *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Berryman v. Rieger,* 150 F.3d 561, 562 (6th Cir.1998). The district court's denial of a qualified immunity claim is reviewed de novo. *See Ward v. Dyke,* 58 F.3d 271, 273 (6th Cir.1995).

## III.

The Rehabilitation Act of 1973 prohibits discrimination and retaliation in employment against disabled persons by federal agencies. *See* 29 U.S.C. §§ 791, 794 (1994); *Smith v. United States Postal Serv.,* 742 F.2d 257, 259 (6th Cir.1984). Significantly, the anti-retaliation provision of the Rehabilitation Act, which incorporates by reference § 12203(a) of the ADA, provides in relevant part that "[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this Act." 29 U.S.C. § 794(a) (1994). Under the Rehabilitation Act, an aggrieved federal employee is entitled to the "remedies, procedures, and rights" set forth in Title VII of the Civil Rights Act. *Id.*

In the present case, the district court, relying on a "plain language" interpretation of the Rehabilitation Act, concluded that supervisors can be held personally liable in damages for retaliation. For support, the district court observed that the term "person" as used in the Rehabilitation Act should be given the same meaning as it has under Title VII, which defines "person" as including "one or more individ-

uals." 42 U.S.C. § 2000e(a) (1994). Adopting Hiler's position, the district court determined that the express and plain meaning of the statute allows a private right of action against supervisors, in their individual capacities, for retaliation. Indeed, the court stated that "when Congress defined 'person' as 'one or more individuals' it meant 'individuals.'"

Although the district court's "plain language" interpretation of the anti-retaliation provision of the Rehabilitation Act has some surface appeal, we believe that the district court's decision falls short of fully resolving the question of supervisor liability under the anti-retaliation provision of the Rehabilitation Act. While this is an issue of first impression, we believe that placing significance on the word "person," as did the district court, frustrates the statutory scheme and remedial purposes of the Rehabilitation Act and ignores analogous case law which hold that supervisors are not liable personally for employment discrimination. Asking what Congress intended the word "person" to mean misdirects the focus of this suit, as the relevant inquiry is what remedies are available to an aggrieved federal employee for retaliation under the Rehabilitation Act.

■ An individual seeking monetary or equitable relief for retaliation under the Rehabilitation Act must discern what remedies are available to them under Title VII. The enforcement provisions of Title VII permit civil actions against an "employer, employment agency, labor organization, or joint labor-management committee...." 42 U.S.C. § 2000e–5(b) (1994). An employer is further defined under Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person."[5] 42 U.S.C. § 2000e(b) (1994).

Ky.Rev.Stat. Ann. § 344.280 (Baldwin 1994), does not confer a private right of action against the federal government, and accordingly dismissed Hiler's state law retaliation

claim against his supervisors in their individual capacities.

5. The ADA, ADEA, and the Rehabilitation Act borrowed the definition of "employer" from

Hence, individuals who are not employers under Title VII cannot be held personally liable for retaliation under the Rehabilitation Act.

Indeed, numerous courts, including this one, have held that supervisors, sued in their individual capacities, are not included within the statutory definition of "employer" under Title VII and its sister civil rights statutes, and accordingly cannot be held personally liable for discrimination. *See Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997) (finding that individual liability is prohibited under Title VII); *Pritchard v. Southern Co. Servs.*, 102 F.3d 1118, 1119 (11th Cir.1996), *cert. denied*, 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997) (finding no personal liability for supervisors under either the Rehabilitation Act or the ADA); *Smith v. Lomax*, 45 F.3d 402, 403 (11th Cir.1995) (recognizing that supervisors, as employees, cannot be held individually liable under the ADEA or Title VII); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–81 (7th Cir.1995) (collecting cases and finding that the ADA does not impose individual liability). Significantly, in *Wathen* this Court, confronted with the issue of whether a supervisor is personally liable in damages for employment discrimination under Title VII, concluded that the statute, legislative history, and relevant case law signify that Congress did not intend for individuals to face liability under Title VII's definition of "employer." *See Wathen*, 115 F.3d at 405–06. Finding it "inconceivable" that " 'a Congress concerned with protecting small employers [by limiting employer liability to those with fifteen or more employees] would simultaneously allow civil liability to run against individual employees[,]' " this Court rejected the argument that the use of the word "agent" in the statutory definition of "employer" was intended to permit supervisors to be sued in their individual capacities. *Id.* at 406 (quoting *Tomka v. Seiler Corp.*,

66 F.3d 1295, 1314 (2d Cir.1995)). Instead, the Court determined that the purpose of imposing liability on an employer and its agent was simply to define the scope of an employer's derivative liability. *See id.*

Hiler, relying primarily on his "plain language" interpretation of the Rehabilitation Act, attacks the weight of authority by asserting that while cases such as *Wathen* find that supervisors are not personally liable for discrimination, such cases do not purport to determine whether there can be personal liability for retaliation under the Rehabilitation Act. However, Hiler's argument fails to account for the statutory framework of the Rehabilitation Act, which expressly provides that persons alleging retaliation under the Rehabilitation Act must look to the enforcement provisions of Title VII. An examination of Title VII's definition of employer, as well as circuit precedent, convey that Title VII expressly forecloses a right of action against supervisors, in their individual capacities, for retaliation under the Rehabilitation Act. Contrary to Hiler's contention, this Court finds no reason why the logic of cases addressing discrimination under Title VII should not apply to cases alleging retaliation.

Hiler responds that the Civil Rights Act of 1991, 42 U.S.C. § 1981a (1994), negates our conclusion, as Title VII's allowance of compensatory and punitive damages, remedies typically available against individuals, indicates Congress' intent to subject individuals to personal liability. Hiler's argument, however, ignores a long line of precedent which finds that Congress' intent is clearly evidenced by the fact that the statute originally limited remedies to reinstatement and back pay, remedies typically only obtainable from an employing entity, and not an individual. *See Wathen*, 115 F.3d at 406 (citations omitted) (stating that Congress' act of providing only equitable relief to a complainant suggests that Congress intended that only

---

Title VII. *See Williams v. Banning*, 72 F.3d 552, 553–54 (7th Cir.1995); 29 U.S.C. §§ 626(b), 630 (1994) (ADEA); 42 U.S.C. §§ 12111(5)(A), 12112(a) (1994) (ADA).

employing entities, not supervisors, be subject to suit). Moreover, when Congress enacted the 1991 amendments, thus allowing compensatory and punitive damages for discrimination under Title VII, Congress calibrated the amounts of damages recoverable to the size of the employer, beginning with employers having at least fifteen employees. Title VII allows a maximum of $50,000 in damages against respondents with 15 to 100 employees, $100,000 in damages against respondents with 101 to 200 employees, $200,000 in damages against respondents with 201 to 500 employees, and $300,000 in damages against respondents with more than 500 employees. *See* 42 U.S.C. § 1981a(b)(3) (1994). Hence, the fact that the Civil Rights Act of 1991 "contains no provision for damages to be paid by individuals, [ ] evidenc[es] a lack of congressional intent to hold individuals liable[;] 'if Congress had envisioned individual liability ... it would have included individuals in this litany of [calibrated] limitations and would have discounted the exemption for small employers....'" *Wathen,* 115 F.3d at 406 (quoting *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 588 n. 2 (9th Cir.1993)).

■ Contrary to both the district court and Hiler's position, we hold that individuals who do not otherwise meet the statutory definition of "employer" cannot be held liable under the Rehabilitation Act's anti-retaliation provision. Although a literal reading of the anti-retaliation provision suggests that individuals can be held personally liable for retaliation, it is well-settled that " 'in expounding a statute, we must not be guided by a single sentence ... but look to the provisions of the whole, and its object and policy.'" *Wathen,* 115 F.3d at 405 (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Indeed, this Court "cannot reverse course in the face of some

vague, aspirational broad intent. Congress had lofty goals but provided limited means for reaching those goals. Individual liability was not one of them." *AIC Sec. Investigations,* 55 .F.3d at 1282 (citation omitted).

In sum, this Court finds that Hiler cannot sue his supervisors under the anti-retaliation provision of the Rehabilitation Act since his supervisors do not meet the statutory definition of an "employer." [6] Because Hiler does not have a remedy against Watkins, Wiedo, or Kuzma in their individual capacities for alleged retaliatory employment practices, it is thus unnecessary for this Court to address the supervisors' second claim of relief, that Hiler's retaliation claim should be dismissed for failure to plead a prima facie claim of retaliation.

### IV.

For the foregoing reasons, we REVERSE and VACATE the judgment of the district court.

---

6. This Court's decision is supported by a recent district court opinion. In *Stern v. California State Archives,* 982 F.Supp. 690 (E.D.Cal.1997), the district court, confronted with the related issue of whether supervisors are liable for retaliation under § 12203 of the ADA, determined that supervisors are not subject to personal liability for retaliation unless they satisfy the statutory definition of "employer." *See id.* at 691–92.