**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 16 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALEXIS KIM SCHRADER,

　　　　Plaintiff-Appellant,

v.

FRED A. RAY, M.D., P.C., an
Oklahoma Professional Corporation,

　　　　Defendant-Appellee.

---

UNITED STATES OF AMERICA,

　　　　Amicus Curiae.

No. 00-5224

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 99-CV-703-C)**

---

Patrick W. Cipolla (Kristin L. Oliver with him on the brief), Gable & Gotwals,
Tulsa, Oklahoma, for Plaintiff-Appellant.

F. Michael McGranahan, Tulsa, Oklahoma, for Defendant-Appellee.

Seth M. Galanter, Attorney (Jessica Dunsay Silver, Attorney, with him on the
brief), Department of Justice, Washington, D.C., for Amicus Curiae, United
States of America.

---

Before **EBEL** , **McKAY** , and **LUCERO** , Circuit Judges.

**EBEL** , Circuit Judge.

Plaintiff-appellant Alexis Kim Schrader appeals from the district court's order granting summary judgment in favor of defendant-appellee Fred A. Ray, M.D., P.C. ("Ray"), on Schrader's complaint brought pursuant to § 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794 (the "Rehabilitation Act"). The district court held that Ray is not subject to liability under § 504 because it has less than fifteen employees. In this appeal, we hold that § 504(d) of the Rehabilitation Act, which incorporates the standards of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), for purposes of determining whether the Rehabilitation Act has been violated, does not incorporate the ADA definition of an "employer," and thus even employers with fewer than fifteen employees are subject to the Rehabilitation Act's requirements so long as they are recipients of federal assistance. We further hold that Ray is not entitled to urge on appeal, as an alternative ground for affirmance, an argument rejected by a magistrate judge in his report and recommendation to which Ray failed to file a timely objection. Accordingly, we REVERSE and REMAND for further proceedings.

## BACKGROUND

Ray employed Schrader as a medical records clerk/receptionist. In 1984, Schrader was diagnosed with kidney cancer. She underwent surgery to remove multiple lipomas in October 1997. In November 1997, she was diagnosed with a brain tumor. She had kidney surgery on January 12, 1998, and was unable to return to work for several months. Schrader claims that during this period, her supervisor repeatedly reassured her that her job would be available when she was ready to return to work. Beginning in March 1998, after it was determined that the brain tumor was non-cancerous, Schrader alleges she was able to work and attempted to return to work on several occasions, but Ray rebuffed her attempts to return to work, then ultimately terminated her employment because of her disability. Schrader filed a one-count suit against Ray under the Rehabilitation Act.

Ray moved to dismiss Schrader's complaint on two grounds, arguing that (1) it was not subject to the Rehabilitation Act because it did not have fifteen or more employees; and (2) Schrader could not bring a cause of action against Ray under § 504 because she was not an intended beneficiary of any federal funds received by Ray. A federal magistrate judge assigned to consider the motion to dismiss prepared a report and recommendation proposing that the motion be denied on both grounds. Ray filed a timely objection to the magistrate judge's

report and recommendation; however, its objection addressed only the magistrate judge's determination on the "fifteen or more employees" issue. Ray did not object to the magistrate judge's recommendation that the motion be denied on the issue of whether Schrader was an intended beneficiary of federal funds.

The district court subsequently held a status conference at which it entered an order rejecting the magistrate judge's report and recommendation. In this order, which appears in the record only in the form of a docket entry, the district court also converted Ray's motion to dismiss to a motion for summary judgment and requested further briefing from the parties. [1] Ray filed a supplemental brief in which it renewed its arguments on both the "fifteen or more employees" issue and the "intended beneficiary" issue. Schrader filed a response brief, also addressing both issues. The district court entered an order granting summary judgment to Ray only on the "fifteen or more employees" issue; it did not discuss the

---

[1]      Although the docket entry does not specify the scope of the further briefing, the district court's subsequent order granting summary judgment sheds light on this question:

> [The magistrate judge] entered a report recommending defendant's motion to dismiss be denied. The Report and Recommendation addressed several different issues. The only issue objected to by the defendant was whether the Rehabilitation Act defines an employer as having 15 or more employees within the relevant 20 week time-frame. At the status conference this Court rejected the Report and Recommendation <u>and took the definition of "employer" under the Rehabilitation Act under advisement pending additional briefing</u>.

"intended beneficiary" issue other than to note that Ray had failed to object on this ground to the magistrate judge's recommendation.

## DISCUSSION

### I.

"We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Hollins v. Delta Airlines, 238 F.3d 1255, 1257 (10th Cir. 2001). Summary judgment is proper if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotation marks omitted).

### II.

Schrader brought her cause of action under § 504 of the Rehabilitation Act, which states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). This statute makes available a private right of action to qualified

individuals who have been subjected to employment discrimination by a program or activity receiving federal financial assistance. [2] <u>Niehaus v. Kan. Bar Ass'n</u>, 793 F.2d 1159, 1162 (10th Cir. 1986). A plaintiff makes out a prima facie case of employment discrimination under the Rehabilitation Act by showing that

> (1) plaintiff is handicapped under the Act; (2) he is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff.

<u>Powers v. MJB Acquisition Corp.</u>, 184 F.3d 1147, 1151 (10th Cir. 1999).

The Rehabilitation Act does not restrict its definition of "program or activity" in the employment discrimination context based upon the number of the defendant's employees. In 1992, however, Congress amended the Rehabilitation Act to provide that in employment discrimination cases alleging violations of the Rehabilitation Act, "[t]he standards used to determine whether this section [of the Rehabilitation Act] has been violated . . . shall be the standards applied under title I of the Americans with Disabilities Act." 29 U.S.C. § 794(d). The ADA defines an employer as "a person engaged in an industry affecting commerce <u>who has 15 or more employees</u> for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A) (emphasis

---

[2] The statutory definition of a "program or activity" includes "all of the operations of . . . an entire corporation, partnership, or other private organization, or an entire sole proprietorship . . . which is principally engaged in the business of providing . . . health care." 29 U.S.C. § 794(b)(3)(A)(ii).

added). However, § 504 of the Rehabilitation Act does not use the term "employer," but rather imposes liability upon entities (or programs or activities) who receive federal assistance. See 29 U.S.C. § 794.

It is undisputed that Ray employs fewer than fifteen employees. The central question posed in this case, therefore, is whether § 504(d) of the Rehabilitation Act incorporates the ADA's "fifteen or more employees" definition of employer as a limitation on the definition of entities covered by the Rehabilitation Act.

Neither the Supreme Court nor this circuit has yet resolved this issue.[3] Other courts have analyzed whether § 504(d) makes the ADA definition of "employer" applicable to the Rehabilitation Act, and they have reached conflicting conclusions. Compare Johnson v. N.Y. Hosp., 897 F. Supp. 83, 86 (S.D.N.Y. 1995) (holding that 1992 amendment to Rehabilitation Act did not incorporate the ADA definition of employer), aff'd, 96 F.3d 33 (2d Cir. 1996), with Hiler v. Brown, 177 F.3d 542, 547 (6th Cir. 1999) (appearing to assume that Rehabilitation Act's incorporation of ADA standards extends to definition of employer); Romand v. Zimmerman, 881 F. Supp. 806, 812 (N.D.N.Y. 1995) ("The

_____

[3]    The amicus cites Roberts v. Progressive Independence, Inc., 183 F.3d 1215 (10th Cir. 1999), in which this court upheld an award under the Rehabilitation Act for failure to reasonably accommodate an employee against a firm that employed only five persons. See id. at 1217. Roberts does not discuss the "fifteen or more employees" issue, however, and thus is of limited value here.

definition of 'employers' found in the ADA is also applicable to the Rehabilitation Act."); Haltek v. Vill. of Park Forest, 864 F. Supp. 802, 803 (N.D. Ill. 1994) (same).

Of the cases that have thus far considered the issue, we find the analysis in Johnson to be the most convincing:

> In enacting the 1992 amendment of the Rehabilitation Act, Congress intended that the standard of "reasonable accommodations" that employers must make under the ADA would serve as the standard in actions alleging Rehabilitation Act violations in the employer-employee context. 42 U.S.C. § 12112(b)(5)(A). This is more easily understood once we recognize that the Rehabilitation Act provides a broader prohibition than one limited to discrimination that takes place in the employment setting . . . . [T]he Rehabilitation Act protects, for example, students at educational institutions and patients at medical facilities, with no explicit exception for entities with less than 15 employees.

> The Rehabilitation Act's application to the employment context was similarly not dependent on an [entity's] number of employees, and did not become so as a result of the 1992 amendment. The language of the amendment states that the ADA's standards are to be used only "to determine whether [the Rehabilitation Act] has been violated." 29 U.S.C. § 794(d). What the amendment does not state is that the standards of the ADA are to be used to determine whether an employer is even subject to the Rehabilitation Act in the first instance.

Johnson, 897 F. Supp. at 86.

We find this reasoning persuasive. We believe that § 504(d) addresses only the substantive standards for determining what conduct violates the Rehabilitation Act, not the definition of who is covered under the Rehabilitation Act. In this regard, Ray's reliance on McDonald v. Commonwealth of Pennsylvania, 62 F.3d

92 (3d Cir. 1995), is unhelpful. In that case, the Third Circuit simply recognized that "the substantive standards for determining liability are the same" in both the ADA and the Rehabilitation Act. Id. at 95 (emphasis added). Thus, McDonald did not hold that the Rehabilitation Act incorporated the ADA's definition of "employer," but only that both statutes had nearly identical substantive definitions of the term "disability." Id.

Furthermore, § 504(c) of the Rehabilitation Act states that "[s]mall providers are not required by [§ 504(a)] to make significant structural alterations to their existing facilities for the purpose of assuring program accessibility, if alternative means of providing the services are available." 29 U.S.C. § 794(c). The terms in § 504(c) are to be "construed with reference to the regulations existing on March 22, 1988." Id. The applicable regulations specifically interpret "small providers" as recipients of federal funds having "fewer than fifteen employees." 7 C.F.R. § 15b.18(c); 28 C.F.R. § 42.521(c); 41 C.F.R. § 101-8.309(d) ("If a recipient with fewer than fifteen employees finds . . . that there is no available method of complying with [the accessibility requirement] other than making a significant alteration in its existing facilities, the recipient may, as an alternative, refer the handicapped person to other providers of those services that are accessible at no additional cost to the handicapped person."). If, as Ray argues, § 504 does not apply to employers with fewer than fifteen

-9-

employees, then § 504(c)'s exclusion of recipients with fewer than fifteen employees from the burden of making significant structural alterations to existing facilities so long as alternative means of providing services are available is rendered meaningless.

Ray argues that Congress could not have intended as a policy matter for small businesses with fewer than fifteen employees to be subject to the Rehabilitation Act. This contention, however, is belied by the statutory definition of "program or activity." Section 504(b)(3)(A) includes within the definition of "program or activity" all the operations of "an entire corporation, partnership, or other private organization,    or an entire sole proprietorship   ," if the assistance extended to the entity as a whole or if the entity is engaged in certain enumerated activities like health care. (Emphasis added). There is no indication that Congress intended to exclude small employers like Ray from the statute's coverage.

The legislative history of the statute also supports the application of the Rehabilitation Act to employers with fewer than fifteen employees so long as they receive federal assistance. The Senate Report [4] demonstrates that Congress

---

[4]    The amendment to § 504(d) was passed as part of the Rehabilitation Act Amendments of 1992, Pub. L. No. 102-569, 106 Stat. 4344, 4430. The House version of this law did not contain any provision tying the Rehabilitation Act standards to the ADA standards; this provision came entirely out of the Senate version and was later adopted by a joint conference committee.    See H.R. Conf.

(continued...)

-10-

intended for the Rehabilitation Act amendments to bring the Act in line with the newly-passed ADA. "Witnesses at the Subcommittee hearing testified repeatedly regarding the importance of the passage of the Americans with Disabilities Act and the need to include the philosophies embodied in the ADA in the Rehabilitation Act." S. Rep. No. 102-357, at 7 (1992), reprinted in 1992 U.S.C.C.A.N. 3712, 3718. Congress did not wish to water down the goals of the Rehabilitation Act to achieve this goal, however:

> As the period for reauthorization of the Rehabilitation Act draws near, we need our most creative thinking to forge a comprehensive Act that will enable us to respond to the work preparation needs of any individual who wants to work, regardless of the severity of his or her disability.

Id. at 6, reprinted in 1992 U.S.C.C.A.N. at 3717 (emphasis added) (quoting Justin Dart, Chair of the President's Committee on the Employment of People with Disabilities).

The statement of Senator Harkin (sponsor of the Senate bill) sheds further light on the reasoning behind the adoption of § 504(d). It assumes that the issue of coverage has been resolved separately before the remedial purpose of the legislation takes effect:

---

[4](...continued)
Rep. No. 102-973, at 219 (1992), reprinted in 1992 U.S.C.C.A.N. 3822, 3888. The Senate Report is thus the best source for legislative history concerning this statute.

Now <u>those who are covered by title V of the Rehabilitation Act</u> will know that   these are the definitions of reasonable accommodation and discrimination that apply.  They will also know that the standards governing preemployment inquiries and examinations, and inquiries of current employees apply.  Incorporating the ADA standards into the Rehabilitation Act will assure that there will be consistent, equitable treatment for both individuals with disabilities and businesses under the two laws.

138 Cong. Rec. S16611 (statement of Senator Harkin) (emphasis added).

There is no suggestion that § 504 of the Act, as originally enacted, was limited to employers with fifteen or more employees.  On the contrary, § 504 set forth a blanket prohibition of employment discrimination against persons with disabilities by any entity that received federal financial assistance, regardless of the number of employees.  The legislative history of § 504(d) contains no indication that Congress intended to limit the previously broad applicability of the Rehabilitation Act by exempting employers who have less than fifteen employees from coverage.  Had this been the intent of Congress, it surely would have been explicit on this significant change.

Differences in the scope of coverage afforded by the ADA and the Rehabilitation Act also weigh against Ray's interpretation.  This court has recognized that the ADA, in "[l]imiting liability to employers with fifteen or more employees," "strikes a balance between the goal of stamping out all discrimination and the goal of protecting small entities from the hardship of litigating discrimination claims."    <u>Butler v. City of Prairie Vill.</u>  , 172 F.3d 736,

744 (10th Cir. 1999) (internal quotation marks omitted). Unlike the blanket involuntary coverage of the ADA, however, the Rehabilitation Act's coverage extends only to entities that choose to receive federal assistance. The balance between prohibiting discrimination and protecting small entities is struck differently in the context of the Rehabilitation Act, as the entities covered by the Rehabilitation Act have chosen to receive financial benefits in exchange for prohibitions on their ability to discriminate. See Consol. Rail Corp. v. Darrone, 465 U.S. 624, 633 n.13 (1984) (noting that, in the Rehabilitation Act, "Congress apparently determined that it would require contractors and grantees to bear the costs of providing employment for the handicapped as a quid pro quo for the receipt of federal funds.").

Although we believe that these factors compel the conclusion that § 504(d) does not incorporate the ADA's definition of "employer" into the Rehabilitation Act's scope of coverage, we recognize that the Sixth Circuit reached the opposite conclusion in Hiler v. Brown, 177 F.3d 542 (6th Cir. 1999), albeit with regard to a different issue. In Hiler, the plaintiff brought a claim for retaliation under the Rehabilitation Act and sought to impose personal liability upon his supervisors in their individual capacities. The court concluded that "individuals who do not otherwise meet the statutory definition of 'employer' cannot be held liable under the Rehabilitation Act's anti-retaliation provision." Id. at 547. Supervisors, the

-13-

court reasoned, are therefore not liable under the Rehabilitation Act because they are not included in Title VII's definition of "employer." [5] Id. at 545-46. The court broadly stated, without analysis, that "[t]he ADA, ADEA, and the Rehabilitation Act borrowed the definition of 'employer' from Title VII." Id. at 546 n.5. The Hiler court appears to have assumed that the Rehabilitation Act's incorporation of the ADA's "standards" extends to the definition of "employer." For the reasons outlined above, we disagree, at least to the extent that the Sixth Circuit would construe its broad language to limit Rehabilitation Act liability to recipients of federal assistance with fifteen or more employees.

The plain language of the statute, its legislative history, and the best-reasoned case law all support the conclusion that the ADA's "fifteen or more employee" restriction has not been incorporated into § 504 of the Rehabilitation Act. We therefore reverse the district court's entry of summary judgment on this issue.

## III.

Ray argues that this court should affirm on an alternate basis: that Schrader was not an intended beneficiary of federal funds. We decline to reach

---

[5] We, of course, are not presented here with the issue of whether the Rehabilitation Act imposes personal liability upon a supervisor. The only issue before us is whether the Rehabilitation Act imposes liability upon a recipient of federal assistance if the recipient has fewer than fifteen employees.

-14-

this issue, as it has been waived. This court has adopted a "firm waiver rule" which provides that a party's failure to file a timely objection to a magistrate judge's recommended decision waives appellate review of both factual and legal determinations. See Vega v. Suthers , 195 F.3d 573, 579 (10th Cir. 1999). [6] As noted above, Ray's objection to the magistrate judge's report and recommendation raised only the "fifteen or more employees" issue. While we may affirm on any basis supported in the record, see, e.g. , Ford v. West , 222 F.3d 767, 773 (10th Cir. 2000), we are not inclined to use that doctrine to rescue Ray from this waiver. Moreover, even if we were inclined to reach the issue, our review fails to reveal adequate grounds for affirmance. We therefore reject Ray's argument.

## CONCLUSION

The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED and REMANDED for further proceedings in accordance with this opinion.

---

[6]     Ray argues that its waiver before the magistrate judge was corrected by its subsequent attempt to raise the issue for summary judgment disposition before the district court. Under the particular facts of this case, we reject this argument. The district court declined to address the alternative issue because it was waived, and we agree.