# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LESTER FLEMING,
        *Plaintiff-Appellant,*

v.

YUMA REGIONAL MEDICAL CENTER;
YUMA ANESTHESIA MEDICAL
SERVICES,
        *Defendants-Appellees.*

No. 07-16427

D.C. No.
CV-05-03906-PHX-
ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
February 12, 2009—San Francisco, California

Filed November 19, 2009

Before: Ronald M. Gould and Jay S. Bybee, Circuit Judges,
and Timothy Tymkovich,* Circuit Judge.

Opinion by Judge Bybee

*The Honorable Timothy Tymkovich, United States Circuit Judge for the Tenth Circuit, sitting by designation.

15323

**COUNSEL**

Stanley Lubin (argued), Lubin & Enoch, P.C., Phoenix, Arizona; Stephanie M. Marnin, Outten & Golden, L.L.P., Stamford, Connecticut, for the plaintiff-appellant.

Sandra J. Creta, Quarles & Brady L.L.P., Phoenix, Arizona, for the defendants-appellees.

---

**OPINION**

BYBEE, Circuit Judge:

This case presents a question of first impression in our court: Does § 504 of the Rehabilitation Act, 29 U.S.C. § 794, extend to a claim of discrimination brought by an independent contractor? In order to answer that question, we must decide whether § 504(d), which refers to "the standards applied under title I of the Americans with Disabilities Act . . . as such sections relate to employment," incorporates Title I literally or selectively. If Title I is incorporated literally, then the Rehabilitation Act is limited by the ADA and only covers employer-employee relationships in the workplace; if selectively, then the Rehabilitation Act covers all individuals "subject to discrimination under any program or activity receiving Federal financial assistance," who may bring an employment discrimination claim based on the standards found in the ADA. 29 U.S.C. § 504(a). The Sixth and Eighth Circuits have concluded that Title I is incorporated literally, *Wojewski v. Rapid City Reg'l Hosp.*, 450 F.3d 338 (8th Cir. 2006); *Hiler v. Brown*, 177 F.3d 542 (6th Cir. 1999), while the Tenth Circuit has concluded that Title I is incorporated selectively. *Schrader v. Ray*, 296 F.3d 968 (10th Cir. 2002). We agree with the Tenth Circuit, and conclude that § 504 incorporates the "standards" of Title I of the ADA for proving when discrimination in the workplace is actionable, but not Title I *in*

*toto*, and therefore the Rehabilitation Act covers discrimination claims by an independent contractor. Accordingly, we reverse the judgment of the district court.

I

For purposes of this appeal, the facts of this case are simple and not contested. Dr. Lester Fleming is an anesthesiologist who suffers from sickle cell anemia. In 2005, Fleming applied for a position as an anesthesiologist at the Yuma Regional Medical Center ("Yuma"). Upon learning of Fleming's sickle cell anemia, Yuma told him that it would not be able to accommodate his operating room and call schedules. Fleming declined to accept this condition of employment, effectively cancelling the contract.

Fleming brought suit against Yuma[1] for breach of his employment contract and employment discrimination in violation of § 504 of the Rehabilitation Act. The district court granted summary judgment in Yuma's favor, ruling that (1) Fleming was an independent contractor, and that (2) independent contractors are not protected by the Rehabilitation Act. Fleming appeals the ruling that the Rehabilitation Act does not apply to independent contractors; he does not, however, appeal the district court's finding that he is an independent contractor.[2]

II

**[1]** The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, was the "first major federal statute designed to protect the

---

[1]Fleming also brought suit against Yuma Anesthesia Medical Services ("YAMS"). The distinction between Yuma and YAMS is not relevant for the purposes of this appeal. We therefore will refer to the defendants collectively as "Yuma."

[2]We review a district court's grant of summary judgment *de novo*. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003).

rights of . . . the handicapped people of this country." *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990); *see also Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 626 (1984) (describing the Act as "a comprehensive federal program aimed at improving the lot of the handicapped"). Section 504 creates a private right of action for individuals subjected to disability discrimination by any program or activity receiving federal financial assistance, *Kling v. Los Angeles County*, 633 F.2d 876, 878 (9th Cir. 1980), including employment discrimination in such programs, *Consol. Rail*, 465 U.S. at 632; *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413 (9th Cir. 1985). It provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Rehabilitation Act broadly defines "program or activity" to include "all of the operations of— . . . an entire corporation, partnership, or other private organization, or an entire sole proprietorship" if the entity as a whole receives federal assistance or if the entity "is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation," and various other services. 29 U.S.C. § 794(b)(3)(A).

**[2]** The Rehabilitation Act, as amended, incorporates various standards and remedies from other civil rights laws. Most important for our case, § 504(d) provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act . . . as such sections relate to employment." 29 U.S.C. § 794(d). *See* 42 U.S.C. §§ 12111-17, 12201-04, 12210. Title I of the ADA defines key terms in the act, § 12111, defines discrimination in the workplace, § 12112, provides for defenses and limitations for employees using illegal drugs or alcohol, §§ 12113-14, 12210, and commits enforcement to the Equal Opportunity Employment

Commission and the Attorney General, § 12117. Although we have not addressed the question, other circuits have held that independent contractors are not covered by Title I. *Aberman v. J. Abouchor & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998); *Johnson v. City of Saline*, 151 F.3d 564, 567-69 (6th Cir. 1998); *Birchem v. Knights of Columbus*, 116 F.3d 310, 312-13 (8th Cir. 1997).

**[3]** The issue before us is whether Dr. Fleming, as an independent contractor, may maintain suit against Yuma based on § 504 of the Rehabilitation Act. Fleming urges us to read § 504(d) to mean that "[t]he *standards*" of Title I of the ADA —and not Title I itself—should be "used to determine whether this section has been violated in a complaint alleging employment discrimination." 29 U.S.C. § 794(d) (emphasis added). Relying on the Tenth Circuit's opinion in *Schrader*, Dr. Fleming would have us hold that § 504 does not literally incorporate Title I of the ADA and, therefore, "§ 504(d) addresses only the substantive standards for determining *what* conduct violates the Rehabilitation Act, not the definition of *who* is covered." *Schrader*, 296 F.3d at 972.

Yuma, not surprisingly, offers a different view. It would have us hold that § 504(d) incorporates Title I of the ADA *in toto*, including any limitations found in those provisions. Relying on decisions from the Sixth and Eighth Circuits, Yuma argues that "the focus of the Rehabilitation Act is upon providing remedies for individuals who are employees" and therefore the Rehabilitation Act, like Title I of the ADA, "requires an employee-employer relationship." *Wojewski*, 450 F.3d at 345. The district court agreed with Yuma and found that Fleming was not an employee, but an independent contractor. It then held, citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 692 (2001) (Scalia, J., dissenting), that "[e]mployment actions under the Rehabilitation Act may only be brought by employees and cannot be brought by independent contractors." Thus, Yuma and the district court would have us read

Title I of the ADA into § 504(d) as though Title I had been incorporated on a jot-for-jot basis.

## III

Although the matter is not entirely free from doubt, we agree with Dr. Fleming that he is covered by the Rehabilitation Act even though he is an independent contractor. We reach this conclusion for several reasons.

## A

[4] First, the scope of the Rehabilitation Act is broader than the ADA.[3] The Rehabilitation Act covers any "otherwise qualified individual" who has been "excluded from the participation in, or denied the benefits of, or . . . subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Rehabilitation Act covers any program receiving federal funds. The Act carefully defines "program or activity" as "*all* of the operations of" state instrumentalities, colleges and universities, local education agencies, and "an entire corporation, partnership, or other private organization, or an entire sole propri-

---

[3]We note that the Rehabilitation Act and the ADA appear to rely on different constitutional footings, which may explain the difference in scope. The Rehabilitation Act, at least insofar as it applies to private entities, draws on Congress's conditional spending power. U.S. CONST. art. I, § 8, cl. 1. *See* 29 U.S.C. § 794(a) (regulating "any program or activity receiving Federal financial assistance"); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 491 (4th Cir. 2005) (explaining that § 504 of the Rehabilitation Act " 'invokes Congress' power under the Spending Clause to place conditions on the grant of federal funds.' " (quoting *Barnes v. Gorman*, 536 U.S. 181, 186 (2002))) (citation omitted); *see also Barnes*, 536 U.S. at 189-90 & n.3. The ADA derives from Congress's power under the Commerce Clause. U.S. CONST. art. I, § 8, cl. 3; *see* 42 U.S.C. § 12111(5) (" 'employer' means a person engaged in an industry affecting commerce"); *United States v. Miss. Dep't of Pub. Safety*, 321 F.3d 495, 500 (5th Cir. 2003) (noting that "the ADA is an exercise of Commerce Clause power").

etorship." 29 U.S.C. § 794(b) (emphasis added). This language has led us to interpret "program or activity broadly." *Sharer v. Oregon*, 581 F.3d 1176, 1178 (9th Cir. 2009) (quoting *Haybarger v. Lawrence County Adult Prob. & Parole*, 551 F.3d 193, 200 (3d Cir. 2008) (internal quotation marks omitted)). Thus, the Rehabilitation Act covers "all of the operations" of covered entities, not only those related to employment.

By contrast, Title I of the ADA prohibits "discriminat[ion] against a qualified individual . . . because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Title I covers all aspects of the employer-employee relationship, but unlike § 504 of the Rehabilitation Act, it does not cover other relationships, which are addressed elsewhere in the ADA. *See Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1172, 1177-78 (9th Cir. 1999).

B

**[5]** Second, Congress did not use language of incorporation when it referred to the ADA in § 504. Instead, Congress referred to the "*standards* used to determine whether [§ 504] has been violated in a complaint alleging employment discrimination." 29 U.S.C. § 794(d) (emphasis added). We think the choice of words is significant. The Supreme Court's decision in *Consolidated Rail Corp. v. Darrone* is instructive in this regard. Section 505 of the Rehabilitation Act provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved . . . by any recipient of Federal assistance . . . under section 794 of this title." 29 U.S.C. § 794a(a)(2). In *Consolidated Rail*, Conrail had refused to employ a locomotive engineer who had become disabled, although it did not find him unfit for employment. The engineer brought suit

under § 504. Conrail argued that § 604 of Title VI limited employment discrimination actions to those employers who received federal financial assistance so long as the "primary object of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3; *see* 465 U.S. at 628. Conrail argued that, because § 504 incorporated Title VI, employment discrimination actions under the Rehabilitation Act were limited to those programs receiving funds "to provide employment" and, since the primary objective of the federal assistance received by Conrail was not to provide employment, the engineer could not bring suit under § 504. The Court rejected Conrail's argument:

> It is clear that § 504 itself contains no such limitation. Section 504 neither refers explicitly to § 604 nor contains analogous limiting language; rather, that section prohibits discrimination against the handicapped under '*any* program or activity receiving Federal financial assistance.' And it is unquestionable that the section was intended to reach employment discrimination.

465 U.S. at 632 (footnote omitted).

**[6]** The Court in *Consolidated Rail* pointed to two facts: (1) § 504 had a broad definition of covered programs, and (2) although § 504 referred to Title VI, it did not refer "explicitly" to language in § 604 that would have restricted its scope. Similarly, we can find no language in § 504(d) that explicitly adopts those sections of Title I that would restrict the scope of the Rehabilitation Act. When Congress said that the Rehabilitation Act should use the "standards" applicable to employment discrimination claims brought under Title I, we think Congress meant for us to refer to Title I for guidance in determining whether the Rehabilitation Act was violated, but we do not think that Congress meant to restrict the coverage of the Rehabilitation Act.

**[7]** In *Zimmerman v. State Department of Justice*, 170 F.3d 1169 (9th Cir. 1999), we dealt with a similar issue to that presented in *Consolidated Rail* and here: Whether Title II of the ADA, by referring to the Rehabilitation Act, either expressly or impliedly incorporated that act into the ADA. *See* 42 U.S.C. § 12133 (adopting the "remedies, procedures, and rights set forth in section 794a of Title 29"). We held that "Congress' choice to incorporate one section of the Rehabilitation Act, which provides certain procedures, does not demonstrate that Congress also intended to incorporate the rest of the Rehabilitation Act's substance." 170 F.3d at 1179. Following *Zimmerman's* lead, we decline to hold that because § 504(d) refers to Title I of the ADA, the ADA somehow narrows the scope of § 504(a). As we observed there, under the Rehabilitation Act, "[d]iscrimination is prohibited under any program or activity that receives such [Federal financial] assistance. This focus naturally encompasses the entire operation of the program or activity, for its federal funding may well flow into compensation for employees," and, we would add, for independent contractors as well. *Id.* at 1181.

## C

**[8]** Third, jot-for-jot incorporation would substantially narrow the scope of the Rehabilitation Act in other ways as well. For example, the ADA's definition of employer, which "means a person engaged in an industry affecting commerce who has 15 or more employees," 42 U.S.C. § 12111(5), would, under Yuma's theory, now govern employment discrimination claims under the Rehabilitation Act. But incorporating that standard would significantly limit the availability of employment discrimination claims under the Rehabilitation Act, a result that seems at odds with Congress's broad definition of "program[s] and activit[ies]" covered by the Rehabilitation Act. 29 U.S.C. § 794(b). Without additional direction from Congress, we are hesitant to reduce the express scope of the Rehabilitation Act by wholesale adoption of definitions from another act. *See Gross v. FBL Fin. Servs., Inc.*, 129 S.

Ct. 2343, 2349 (2009) ("When conducting statutory interpretation, we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.' " (quoting *Fed. Express Corp. v. Holowecki*, 128 S. Ct. 1147, 1153 (2008))). Ironically, if we adopted the district court's and Yuma's position, we would have to conclude that Congress narrowed the Rehabilitation Act by adopting the ADA. That conclusion contradicts the plain import of those acts, and we decline to go down that road without a clearer indication that Congress wanted us to.

[9] We find the reasoning of the Tenth Circuit persuasive. In *Schrader v. Ray*, the issue was whether § 504(d) of the Rehabilitation Act incorporated the ADA's " 'fifteen or more employees' definition of employer as a limitation on the definition of entities covered by the Rehabilitation Act." 296 F.3d at 971. Deciding that it did not, the court adopted the reasoning from *Johnson v. N.Y. Hospital*, 897 F. Supp. 83 (S.D.N.Y. 1995):

> In enacting the 1992 amendment of the Rehabilitation Act, Congress intended that the standard of "reasonable accommodations" that employers must make under the ADA would serve as the standard in actions alleging Rehabilitation Act violations in the employer-employee context. . . . What the amendment does not state is that the standards of the ADA are to be used to determine whether an employer is even subject to the Rehabilitation Act in the first instance.

*Schrader*, 296 F.3d at 972 (quoting *Johnson*, 897 F. Supp. at 86). The Tenth Circuit concluded that § 504(d) "addresses only the substantive standards for determining *what* conduct violates the Rehabilitation Act, not the definition of *who* is covered under the Rehabilitation Act." 296 F.3d at 972.

Latching on to the word "substantive," Yuma argues that we are bound by the Supreme Court's more recent decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), in which the Court held that the fifteen-employee qualification in Title VII's definition of employer is "substantive." Yuma contends that: (1) Section 504(d) incorporates Title I's substantive requirements; (2) *Arbaugh* holds that the definition of "employer" is substantive; (3) therefore, § 504 incorporates Title I's definition of "employer." Yuma's argument has two problems. First, Yuma places undue weight on the term "substantive," a term that does not appear in § 504(d). It is true that other circuits have sensibly described the standards referred to in § 504(d) as "substantive,"[4] but that descriptive term tells us little about the scope of the Rehabilitation Act.

The other problem with Yuma's argument is that it equivocates two meanings of "substantive": substantive as opposed to jurisdictional, and substantive as opposed to procedural. In *Arbaugh*, the Supreme Court examined whether Title VII's definition of "employer" as an entity that employs fifteen or more employees is jurisdictional or a "substantive ingredient of a Title VII claim." 546 U.S. at 503. The Court concluded that the fifteen-or-more-employees requirement concerns the substantive adequacy of the claim and was not a prerequisite for establishing subject matter jurisdiction. *Id.* at 504. However, the Supreme Court's conclusion that Title VII's definition of employer is substantive rather than jurisdictional does not force the conclusion that the definition is "substantive" rather than "procedural," or something else. These are different contrast classes.[5] That the Supreme Court determined that

---

[4]*See McDonald v. Pa. Dep't of Pub. Welfare*, 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same."); *Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995) ("[W]hether suit is filed against a federally-funded entity under the Rehabilitation Act or against a private employer under the ADA, the substantive standards for determining liability are the same.").

[5]As a simple example, one must recognize when seeking directions that right rather than left doesn't necessarily also mean right rather than wrong.

the fifteen-employee requirement is a "substantive ingredient" of a Title VII claim does not tell us whether the ADA's definition of employer is part of the ADA's substantive standard for determining when discrimination occurs. *Arbaugh*, therefore, did not address, let alone answer the question before us.

D

Fourth, if we adopted Yuma's reading, there would be substantial duplication between the Rehabilitation Act and the ADA—perhaps inconsistent duplication—in the definitions of key terms. Section 504 refers to 29 U.S.C. § 705(20) for a definition of the term "individual with a disability." Section 705(20) defines that term generally and then creates certain exclusions. It addresses employment in two specific cases. In § 705(20)(C)(v), the Rehabilitation Act provides that "[f]or purposes of [29 U.S.C. §§ 793 and 794] as such sections relate to employment, the term 'individual with a disability' does not include any individual who is an alcoholic" if alcoholism prevents the individual from performing his duties. And § 705(20)(D), for purposes of employment, similarly excludes persons who have a "currently contagious disease or infection" if the disease or infection would "constitute a direct threat to the health or safety" of others. 29 U.S.C. § 705(20)(D).

Title I of the ADA has its own provisions relating to "infectious and communicable diseases," 42 U.S.C. § 12113(d), and illegal use of drugs and alcohol, 42 U.S.C. § 12114. If Yuma is correct that Title I is incorporated into the Rehabilitation Act, then either the ADA's exclusions for communicable diseases and illegal use of drugs and alcohol displace the Rehabilitation Act's own exclusions, or we have to harmonize parallel sections. We have not undertaken a side-by-side comparison of the Rehabilitation Act's provisions with those of the ADA in these areas, but the duplication suggests that Congress has established two parallel schemes, which counsels

against finding that Congress created one scheme and then displaced it with a second, duplicative scheme.

E

We recognize that our decision puts us in conflict with the Sixth and Eighth Circuits. With all due respect, we do not find their analysis of the Rehabilitation Act persuasive. In contrast to the Tenth Circuit's decision in *Schrader*, the Eighth Circuit held that § 504(d) does incorporate the ADA's employee-employer requirement into the Rehabilitation Act. *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 345 (8th Cir. 2006). Its brief discussion noted: "Given the similarity between Title I and the Rehabilitation Act, absent authority to the contrary, we construe both to apply to an employee-employer relationship and decline [the] appellant's invitation to extend coverage of the Rehabilitation Act to independent contractors." *Id.* In our view, however, there is no need here to "extend" the Rehabilitation Act; its language is broad enough to cover employees and independent contractors alike. In this respect, Title I and § 504 are quite different. Section 504 does not even mention employment, while Title I deals exclusively with employment. *Zimmerman*, 170 F.3d at 1176-77. We thus do not find the Eighth Circuit's cursory comparison of § 504 and Title I to be persuasive evidence that the Rehabilitation Act excludes independent contractors.[6]

The Sixth Circuit also incorporated, albeit indirectly, the

---

[6]The district court and Yuma rely on a statement in Justice Scalia's dissent in *PGA Tour* that Title I "does not protect independent contractors." 532 U.S. at 692 (Scalia, J., dissenting). The statement, of course, is entirely unexceptional. Title I of the ADA is about employment. *See Zimmerman*, 170 F.3d at 1176 ("Title I contains detailed and comprehensive employment provisions"). The question here is whether the Rehabilitation Act's reference to Title I binds the Rehabilitation Act to the same meaning. For the reasons we have described above, we do not think Justice Scalia's bare observation in his dissent in *PGA Tour* informs the discussion.

ADA's limitation into the Rehabilitation Act, holding that "individuals who do not otherwise meet the [Title VII] statutory definition of 'employer' cannot be held liable under the Rehabilitation Act's anti-retaliation provision." *Hiler v. Brown*, 177 F.3d 542, 547 (6th Cir. 1999). As an initial matter, the Sixth Circuit's decision in *Hiler* is of dubious relevance to this case because the claim in *Hiler* was brought under § 501 of the Rehabilitation Act—not § 504. *See id.* at 545. Additionally, at issue in *Hiler* was whether the Rehabilitation Act created a private cause of action against supervisors in their individual capacities for retaliation. *Id.* at 543. In concluding that it did not, the Sixth Circuit noted that the ADA and Rehabilitation Act "borrowed the definition of 'employer' from Title VII" and therefore if an individual does not meet the Title VII definition of employer, he cannot be liable under the Rehabilitation Act's anti-retaliation provision. *Id.* at 546 n.5, 547. Though *Hiler* states that the Rehabilitation Act borrowed the definition of employer from Title VII, § 504 specifically defines the entities to which it applies, and does not address employers. *See* 29 U.S.C. §§ 705(20), 794(a), (b). In short, *Hiler* does not speak to the issue in the case before us, and to the extent it does, we are not moved by its analysis.

Finally, although we have rejected it, we recognize that there is some force to the position taken by the district court and Yuma and endorsed by the Eighth and Sixth Circuits. Section 504(d) plainly refers us to Title I of the ADA "as such sections relate to employment." We recognize that such language of referral might be read to suggest that Title I was to be incorporated jot-for-jot into employment discrimination actions brought under the Rehabilitation Act. We also acknowledge that jot-for-jot incorporation is in some respects easier to administer than a selective regime. But our own administrative convenience is not a factor in determining what Congress meant, and for the reasons discussed we have concluded that this is not the best reading of the Rehabilitation Act.

## IV.   CONCLUSION

**[10]** We hold that § 504 of the Rehabilitation Act is not limited to employers and employees as defined in Title I of the ADA, but rather applies to independent contractors and the entities that hire them. Fleming's disability discrimination claim under § 504 is proper and his action against Yuma may proceed.

REVERSED.