Cite as 2026 Ark. 53

# SUPREME COURT OF ARKANSAS

No. CV–25–11

| | |
|---|---|
| BENTON SCHOOL DISTRICT; LORI BACON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; AND LITA GATTIS, IN HER INDIVIDUAL AND OFFICIAL CAPACITY | **Opinion Delivered:** March 12, 2026 |
| APPELLANTS | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-20-522] |
| V. | HONORABLE BRENT DILLON HOUSTON, JUDGE |
| BRANDI GREER | REVERSED AND REMANDED. |
| APPELLEE | |

**SHAWN A. WOMACK, Associate Justice**

This case arises from Brandi Greer's claim that the Benton School District, Lori Bacon, and Lita Gattis unlawfully retaliated against her and prevented her from working as a substitute teacher in the district after she filed an ethics complaint against a teacher in the district concerning the treatment of her child. The circuit court granted summary judgment to Greer on her retaliation claims and the jury awarded her $7,000 in damages.[1] The court also entered a permanent injunction barring the District from prohibiting her from serving as a substitute. Because Greer's claims fail as a matter of law, we reverse the circuit court's summary-judgment ruling and enter judgment for the appellants. As a result, we likewise

---

[1]Greers retaliation claims are brought under 29 U.S.C. § 794, 42 U.S.C. § 1983, and Ark. Code Ann. § 16-123-105.

reverse the jury's award of damages and the circuit court's order granting a permanent injunction.

I. *Facts and Procedural Background*

The appellants in this case are the Benton School District, Lori Bacon, and Lita Gattis. Bacon is the former principal of the Angie Grant Elementary School. Gattis is the former assistant superintendent of the District. The appellants were sued by Brandi Greer, a substitute teacher employed by Kelly Services, Inc. The District contracted with Kelly Services, Inc., for the placement of substitute teachers in the school district.

In 2017 and 2018, Greer's child attended the Angie Grant Elementary School. Greer frequently served as a substitute teacher there during this time period. In the fall of 2017, a dispute arose between Greer and her child's teacher, Holly Fite. Greer then filed an ethics complaint against Fite in November of 2017 with the Arkansas Department of Education's Professional Licensure Standards Board (State Board), alleging that Ms. Fite had violated the Code of Ethics for Arkansas Educators due to her treatment of the Appellee's child. In February of 2018, the District informed Kelly Services, Inc., that Greer could not substitute at Angie Grant until the investigation was complete. After further discussions with Greer, the District ultimately decided that it was best that Greer not substitute at any school within the District. This did not prevent Greer from substituting for any of the other schools within Saline County that Kelly Services, Inc., contracted with. In 2018, the State Board found that Greer's complaint was baseless.

In June 2020, Greer filed a lawsuit against her employer, Kelly Services, Inc., Benton School District and Lori Bacon. She claimed discrimination and retaliation in violation of

2

the federal Rehabilitation Act of 1973, the First Amendment of the U.S. Constitution, and article 2, section 6 of the Arkansas Constitution. Kelly Services, Inc., was dismissed from the case without prejudice the next month. In August 2020, the District and Bacon filed their joint response to the complaint. In response, Greer filed an amended complaint, adding Lita Gattis as a defendant.

In her amended complaint, Greer alleged that (1) the District violated § 504 of the Rehabilitation Act by retaliating against her for requesting accommodations for her child and for complaining about discrimination against her child; and (2) Ms. Bacon and Ms. Gattis, both in their individual and official capacities, violated 42 U.S.C. § 1983 and the Arkansas Civil Rights Act by retaliating against her for exercising her First Amendment rights. The appellants filed their motion to dismiss the case, which was denied by the circuit court in December 2020.

In July 2021, Greer filed a partial motion for summary judgment on liability. The appellants filed a response to the motion as well as a cross-motion for summary judgment, arguing that (1) the District was entitled to summary judgment on the appellee's § 504 claim because Greer was not the District's employee and she had not suffered an adverse employment action; and (2) Ms. Bacon and Ms. Gattis were entitled to summary judgment on the § 1983 and ACRA claims because: (a) Greer did not engage in constitutionally protected speech because she did not speak on a matter of public concern; (b) Ms. Bacon and Ms. Gattis were entitled to qualified immunity on the individual-capacity claims; (c) Greer's rights were not violated due to the policy, custom, or practice of the District, thus

3

defeating the official-capacity claims; (d) Greer did not suffer an adverse employment action; and (e) Greer failed to mitigate her damages.

In November 2021, the circuit court granted Greer's partial motion for summary judgment against the District, Lori Bacon, and Lita Gattis in both their official and individual capacities and granting in part and denying in part the defendants' motion for summary judgment with respect to qualified immunity of separate defendants Lori Bacon and Lita Gattis. The appellants filed an interlocutory appeal from this order, arguing that the circuit court erred in ruling that Ms. Bacon and Ms. Gattis were only immune from liability above their insurance limits and not immune from suit. In an opinion dated November 9, 2023, this court affirmed in part and remanded in part, holding that Ark. Code Ann. § 21-9-301 (Repl. 2022), which states that certain government officials are immune from suit except to the extent that they are covered by liability insurance, applied to ACRA claims but not to § 1983 claims.

On remand, the circuit court entered an order that, in effect, dismissed the § 1983 individual-capacity claims against Ms. Bacon and Ms. Gattis on qualified-immunity grounds. The court also reaffirmed its ruling that both are immune from liability on the ACRA individual-capacity claims except to the extent of any applicable insurance coverage.

As noted above, in November of 2021 the circuit court had granted summary judgment in Greer's favor on the issue of liability on her Rehabilitation Act §504 claims against the District, her §1983 official capacity claims against Bacon and Gattis (which the circuit court found were claims against the District), and her individual capacity ACRA claims against Bacon and Gattis. A jury trial was held on the issue of damages for these

4

claims on August 27, 2024.[2]  Over the appellants' objection, the circuit court ruled that the jury could consider the issue of punitive damages.  The jury returned a verdict awarding $3,500 to Greer in compensatory damages and $3,500 in punitive damages.

On September 6, 2024, Greer filed a motion for injunctive relief, arguing that the District should be permanently enjoined from preventing her from serving as a substitute teacher within the District.  The appellants filed their response on September 13, 2024, arguing that cases involving the loss of employment do not impart the kind of irreparable harm necessary to justify injunctive relief because a loss of employment can be adequately compensated by money damages.  On September 26, 2024, the circuit court entered its final order and judgment, incorporating the jury award of damages and granting the Greer's motion for a permanent injunction.  The appellants now appeal the order granting summary judgment, the jury award of damages, and the order granting a permanent injunction.[3]

## II. *Standard of Review*

The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment.  Indeed, our law is clear that summary judgment is to be granted only when there are no genuine issues of material fact to be litigated, and

---

[2]The jury instructions provided: "Defendants have violated Ms. Greer's right not to be retaliated against under the Arkansas Civil Rights Act and the Arkansas Constitution, which forbid retaliation against citizens for exercising speech rights and the right to petition the government. Thus, Defendants have violated Ms. Greer's right not to be retaliated against for opposing disability discrimination, a protected activity under the Rehabilitation Act."

[3]Brandi Greer did not cross–appeal any of the rulings made by the circuit court.

the movant is entitled to judgment as a matter of law.[4] When parties file cross-motions for summary judgment, which is what happened here, they agree that there are no disputes as to the facts of the case and that summary judgment is an appropriate means of resolving the dispute.[5] Thus, we simply determine whether Brandi Greer or, alternatively, the appellants were entitled to judgment as a matter of law.[6] As always, we review summary judgment de novo.[7]

### III. *Discussion*

#### A. The Circuit Court Erred in Granting Summary Judgment on Greer's Federal Rehabilitation Act Claim

Greer alleges that the District retaliated against her (i.e., prohibited her from serving as a substitute teacher), in violation of § 504 of the Rehabilitation Act, after she complained about disability-related discrimination involving her child. Greer's § 504 retaliation theory fails at the threshold. The claim she presses is an employment-retaliation claim, and Congress has made plain that such claims under § 504 are governed by the standards applicable to Title I of the Americans with Disabilities Act.[8] Those standards presuppose an

---

[4]*See* Ark. R. Civ. P. 56(c)(2); *see also Boyle Ventures, LLC v. City of Fayetteville*, 2025 Ark. 71, at 4, 711 S.W.3d 280, 283; *Cherokee Nation Bus., LLC v. Gulfside Casino P'ship*, 2023 Ark. 153, at 4, 676 S.W.3d 368, 371.

[5]*Cherokee Nation Bus., LLC*, 2023 Ark. 153, at 5, 676 S.W.3d at 371–72.

[6]*Id.* at 5, 676 S.W.3d at 371.

[7]*Corbitt v. Ark. State Univ.*, 2024 Ark. 44, at 3, 685 S.W.3d 901, 903; *Cherokee Nation Bus., LLC*, 2023 Ark. 153, at 5, 676 S.W.3d at 372.

[8]We assume without deciding that Congress's decision to incorporate these Title I ADA standards means it has decided to incorporate its claims as well. But that threshold issue is far from clear.

employer–employee relationship. Because no such relationship existed here between Greer and the District, the claim cannot proceed.

Section 504(a) broadly prohibits disability-based discrimination in federally funded programs.[9] But Congress drew a critical distinction when the alleged discrimination is employment-based, as is the case here. Section 504(d) provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination . . . shall be the standards applied under title I of the Americans with Disabilities Act."[10] Title I, in turn, regulates discrimination by employers against employees.[11] By expressly incorporating Title I's standards, Congress tethered § 504 employment claims—including retaliation claims arising from employment—to the same threshold requirement: an employment relationship between the plaintiff and the defendant. If that relationship is absent, the claim fails at the outset.

Federal courts have repeatedly treated the ADA and the Rehabilitation Act as materially alike in this respect.[12] Because Title I of the ADA protects employees—not

---

[9]"No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

[10]"The standards used to determine whether this section has been violated in a complaint *alleging employment discrimination* under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), *as such sections relate to employment*." 29 U.S.C. § 794(d).

[11]*See* 42 U.S.C. § 12112(a).

independent contractors or other nonemployees—courts applying § 504(d) have required the same employment relationship.[13]  The Eighth Circuit's decision in *Wojewski v. Rapid City Regional Hospital, Inc.,* 450 F.3d 338 (8th Cir. 2006) is directly on point.  There, a physician whose hospital privileges were revoked sued under both Title I of the ADA and the Rehabilitation Act.  The court held that his claims failed because he was not an employee but an independent contractor.  Emphasizing the parallel structure of the statutes, the court concluded that, "[g]iven the similarity between Title I and the Rehabilitation Act, absent authority to the contrary, we construe both to apply to an employee-employer relationship" and declined to extend coverage to independent contractors.[14]  Other courts have reached the same conclusion, reasoning that § 504's incorporation of ADA employment standards necessarily imports Title I's employee-status requirement.[15]

Greer urges a broader reading and points to decisions from other circuits that have allowed certain nonemployees to pursue § 504 discrimination claims.[16]  But that approach cannot be squared with the statute's text.  Section 504(d) does not merely suggest that ADA

---

[12]The Eighth Circuit Court of Appeals has explained that the same standards that apply to the Americans with Disabilities Act of 1990 (hereinafter, "ADA") are to be used when analyzing claims under § 504. *See Hill v. Walker*, 737 F.3d 1209 (8th Cir. 2013); *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338 (8th Cir. 2006).

[13]*Wojewski*, 450 F.3d at 344–45.

[14]*Id.* at 345.

[15]*See Hiler v. Brown*, 177 F.3d 542 (6th Cir. 1999).

[16]The circuit court relied on *Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422 (5th Cir. 2016) in making its decision on the Rehabilitation Act retaliation claim below.  We note that *Flynn* didn't involve a retaliation claim under the Act.  Instead, the claim there was purely a discrimination claim.

principles may be informative; it commands that the standards used to determine violations in employment-discrimination complaints "shall be" those applied under Title I. Congress thus made a deliberate choice to channel § 504 employment claims through the ADA's employment framework. And that framework regulates discrimination by employers against employees. Had Congress wished to extend § 504's employment-retaliation protections to independent contractors or other nonemployees, it could have said so. It did not.

The undisputed record confirms that Greer was not the District's employee. She was hired, paid, and managed by Kelly Services, Inc., a third-party staffing company that supplied substitute teachers to the District. Greer applied to Kelly Services, interviewed with that company, passed its background check, and received assignments through its system. She could accept substitute assignments in multiple districts served by Kelly Services and was paid solely by that company. The circuit court expressly found that Greer was an employee of Kelly Services—not of the District. No party disputes that finding.

Even so, the circuit court allowed Greer's § 504 employment-retaliation claim to proceed against the District. That ruling cannot be reconciled with § 504(d)'s text or with our on-point federal precedent. Because § 504 employment claims incorporate Title I standards, and because Title I requires an employer–employee relationship between the plaintiff and the defendant, Greer cannot maintain an employment-retaliation claim against a non-employer. The circuit court therefore erred in granting summary judgment in her favor on this theory. We reverse and enter judgment for the appellants.

B. Section 1983 and ACRA Claims

9

Next, we turn to Greer's federal and Arkansas Civil Rights Act Claims. On remand, the circuit court entered an order that, in effect, dismissed the federal § 1983 individual-capacity claims against Ms. Bacon and Ms. Gattis on qualified-immunity grounds.[17] The court also reaffirmed its ruling that both are immune from liability on the ACRA individual-capacity claims except to the extent of any applicable insurance coverage. What remains, then, are (1) the §1983 and ACRA official capacity claims against the District and (2) the ACRA individual capacity claims against Bacon and Gattis.

i. *The circuit court erred in granting summary judgment in favor of Greer on her § 1983 and ACRA official-capacity claims*

Section 1983 creates a private cause of action against a person acting under color of state law who deprives another of rights secured by the Constitution or federal law.[18] It does not create substantive rights; it provides a vehicle for enforcing rights found elsewhere. To prevail, a plaintiff must show that a state actor violated a right guaranteed by the U.S. Constitution or a federal statute.[19]

The Arkansas Civil Rights Act operates in parallel. It authorizes suits for violations of rights secured by the Arkansas Constitution, and courts interpret it in light of federal §

---

[17]Greer did not file a cross-appeal challenging the dismissal of her federal §1983 individual capacity claims and so that ruling is not before us.

[18]*See* 42 U.S.C. § 1983.

[19]*See, e.g., Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999).

1983 precedent.[20]  Thus, the same defects that defeat Greer's official-capacity § 1983 claim defeat her official-capacity ACRA claim as well.

Greer sued District officials in their official capacities.  Such claims are, in substance, claims against the District itself.  Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."[21]  A governmental entity, however, is not liable under § 1983 or the ACRA on a respondeat-superior theory.[22]  Liability attaches only when the alleged constitutional violation was caused by an official policy, custom, or usage of the entity.[23]

A custom or usage, for purposes of § 1983 or the ACRA, is demonstrated by (1) a continuing, widespread, and persistent pattern of unconstitutional conduct by the government entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policy-making officials after notice to the officials of that misconduct; (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.[24]  This court has recognized that isolated incidents of misconduct by government

---

[20]Ark. Code Ann. § 16-123-105(a) (Repl. 2016); *Harmon v. Payne*, 2020 Ark. 17, 592 S.W.3d 619.

[21]*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[22]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[23]*Repking v. Lokey*, 2010 Ark. at 6; 377 S.W.3d at 217 (quoting *Ware v. Jackson County, Mo.*, 150 F.3d 873 (8th Cir. 1998)).

[24]*Id.*

employees are insufficient to establish governmental policy or custom.[25] Local governments are not liable simply because an employee acts in a way that deprives the constitutional rights of another. Local governments can be liable under § 1983 or the ACRA only when their official policies and customs cause their employees to violate another person's constitutional rights.[26]

Greer neither pled nor proved the existence of any District policy or custom that caused a constitutional deprivation. She identified no written policy excluding substitutes for filing complaints and offered no evidence of a widespread pattern of similar conduct. Nor did she show that a final policymaker caused or ratified the alleged actions. Under Arkansas law, the school board—not individual administrators—is the District's final policymaker.[27] The record contains no allegation or proof that the Board authorized, directed, or even knew of the decision at issue.

The circuit court nonetheless imposed official-capacity liability based solely on the conduct of District employees. That is precisely what *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) forbids. Because Greer failed to establish that any District policy, custom, or final–policymaker decision caused a constitutional violation, summary judgment in her favor on the § 1983 and ACRA official-capacity claims was error. We reverse and enter judgment for the appellants.

---

[25]*Id.*

[26]*See City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

[27]Ark. Code Ann. § 6-13-620 (Repl. 2010).

ii. *The circuit court erred in granting summary judgment in favor of Greer on her individual- capacity ACRA claim*

Greer's individual-capacity claim fails under the Arkansas Civil Rights Act because she did not establish the elements of a First Amendment retaliation claim. The ACRA provides a cause of action for deprivations of rights secured by the Arkansas Constitution, and courts construing the statute are guided by federal § 1983 precedent.[28]

Generally, to prevail on a free-speech retaliation claim, a plaintiff must show that (1) she engaged in constitutionally protected speech; (2) the defendant took an adverse action that would deter a person of ordinary firmness from exercising that right; and (3) the protected speech was a substantial or motivating factor in the adverse action.[29] When the alleged retaliation arises in a government employment or contractor relationship, however, the court must first determine whether the speech is constitutionally protected under the *Pickering-Connick* framework.

Put simply, in government-employment and contractor cases, the *Pickering-Connick* inquiry determines whether the plaintiff engaged in constitutionally protected speech at all; only if that threshold is met does the court proceed to the ordinary retaliation elements.

Government contractors, like employees, may bring First Amendment retaliation claims against the government.[30] But such claims require the plaintiff to show: (1) she was

---

[28]Ark. Code Ann. § 16-123-105(a), (c) (Repl. 2016); *see also Smith v. Britt*, 363 Ark. 126, 132, 211 S.W.3d 485, 490 (2005).

[29]*Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016); *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).

13

speaking as a private citizen, rather than pursuant to her official duties; (2) her speech involved a matter of public concern, and (3) her interest in commenting on the matter outweighed the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.[31]  If the speech does not involve a matter of public concern, the First Amendment does not protect it, and the claim fails at the threshold.[32]

The circuit court declined to apply the *Pickering-Connick* framework on the ground that Greer was not a District employee.  That was error.  Independent contractors who perform government work are subject to the same First Amendment analysis as public employees.  As the Eighth Circuit has explained, for free-speech retaliation claims, "the same framework and analysis apply to government contractors as to government employees."[33]  This case fits squarely within that category.  The alleged retaliation—Greer's inability to obtain substitute-teaching assignments from the District—arose from her role as a government contractor, not from her status as a private citizen.  When the claimed injury is tied to a government contracting relationship, the *Pickering-Connick* framework governs.

---

[30]*Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 684–85 (1996); *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 720 (1996); *see also Heritage Constructors, Inc. v. City of Greenwood*, 545 F.3d 599, 602–03 (8th Cir. 2008).

[31]*Hicks v. Benton Cnty. Bd. of Educ.*, 222 F. Supp. 3d 613, 627 (W.D. Tenn. 2016); *see also Connick v. Myers*, 461 U.S. 138, 146–47 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

[32]*Connick*, 461 U.S. at 147.

[33]*Heritage Constructors, Inc. v. City of Greenwood*, 545 F.3d 599, 602 (8th Cir. 2008).

Under that framework, Greer's ethics complaint was not protected speech. Whether speech addresses a matter of public concern depends on its content, form, and context.[34] Speech driven by a personal grievance—even if touching on matters of public interest—is generally not protected.[35] Greer's complaint alleged mistreatment of her own child and demanded redress for him alone. It did not purport to expose systemic wrongdoing or advocate on behalf of other students. Courts consistently hold that advocacy on behalf of a single student is a private matter, not speech on a matter of public concern.[36] The circuit court's conclusion that the complaint implicated a public interest conflated the subject matter with the speaker's purpose. In this context, the First Amendment protects speech intended to inform the public, not speech aimed solely at resolving a private dispute. Because Greer's complaint advanced only her personal interests, it was not constitutionally protected within the scope of our analysis here.

Because Greer failed to establish that her speech was protected (i.e., a nonprivate matter of public concern), her ACRA individual-capacity claims against Bacon and Gattis cannot survive as a matter of law. The circuit court's grant of summary judgment in Greer's favor on those claims is reversed, and judgment is entered for the appellants

iii. *The circuit court erred in granting Greer a permanent injunction*

---

[34]*De Llano v. Berglund*, 282 F.3d 1031 (8th Cir. 2002).

[35]*Id.*

[36]*See Gorum v. Sessoms*, 561 F.3d 179 (3d Cir. 2009); *Hicks v. Benton Cnty. Bd. of Educ.*, 222 F. Supp. 3d 613 (W.D. Tenn. 2016).

Because Greer's substantive claims fail as a matter of law, the permanent injunction cannot stand. An injunction is a remedy, not a freestanding cause of action. Without a valid underlying violation, there is nothing to enjoin. Accordingly, because we reverse the summary-judgment rulings, we also vacate the order granting the injunction.

## IV. *Conclusion*

Because Greer's claims fail as a matter of law, we reverse the circuit court's summary-judgment rulings. We likewise reverse the jury's award of damages and vacate the circuit court's order granting a permanent injunction. We remand for entry of judgment in favor of appellants consistent with this opinion.

Reversed and remanded.

BAKER, C.J., and HUDSON, J., concur in part and dissent in part.

**COURTNEY RAE HUDSON, Justice, concurring in part and dissenting in part.** I agree with the majority that the circuit court erred in granting summary judgment in favor of appellee Brandi Greer on her § 1983 and official-capacity Arkansas Civil Rights Act (ACRA) claims. I would also reverse the grant of permanent injunctive relief as explained below. However, I would affirm the circuit court's grant of summary judgment on the remaining claims. Accordingly, I concur in part and dissent in part.

Appellants contend that Greer cannot assert a claim under the Rehabilitation Act of 1973 because the District was not her employer. No such employment relationship is required. Section 504 of the Rehabilitation Act broadly prohibits disability-based discrimination in federally funded programs:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied

16

the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a). Nothing in this provision limits relief to the employment context.

Another subsection provides as follows:

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d). Clearly, subsection (d) relates to employment-discrimination allegations and provides that the standards of certain parts of the Americans with Disabilities Act of 1990 (ADA) are applicable to the Rehabilitation Act as such sections apply to employment. This is far from a wholesale incorporation of the ADA for all purposes.

I would follow the well-reasoned decisions of the Courts of Appeal for the Fifth, Ninth, and Tenth Circuits and hold that the Rehabilitation Act does not incorporate Title I's requirement that the defendant be the plaintiff's "employer" as that term is defined in the ADA. *Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422 (5th Cir. 2016); *Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938 (9th Cir. 2009); *Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968 (10th Cir. 2002). As the Ninth Circuit has explained, to reduce the express scope of the Rehabilitation Act by wholesale adoption of the ADA, "we would have to conclude that Congress narrowed the Rehabilitation Act by adopting the ADA. That conclusion contradicts the plain import of those acts, and we decline to go down that road without a clearer indication that Congress wanted us to." *Fleming*, 587 F.3d at 944. I would reject

17

appellants' argument that an employment relationship is required to state a claim under the Rehabilitation Act.

In addition, appellants argue that Greer failed to show an adverse employment action under the Rehabilitation Act. As explained above, an employment relationship is not required under section 504 of the Rehabilitation Act. Here, there is no dispute that Greer was barred from working in the District because of her ethics complaint to the Arkansas Department of Education. Greer's inability to continue working at the same school her children attended was materially adverse to her, in that she sought to have the same schedule as her children and to avoid paying for childcare, as was the resulting loss in pay. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) (recognizing that a change in schedule may make little difference to many workers, but may matter enormously to a mother with school-age children). In my view, Greer stated a claim under the Rehabilitation Act, the material facts were undisputed, and she was entitled to judgment as a matter of law. Appellants have failed to make a convincing argument for reversal on this point, and therefore I would affirm.

I would also affirm the grant of summary judgment in favor of Greer on her individual-capacity ACRA claim. Appellants argue that Greer was neither an employee nor an independent contractor of the District; rather, she was an employee of a third party who is nonetheless subject to the test set out in *Pickering v. Board of Education*, 391 U.S. 563 (1968), and further developed in *Connick v. Myers*, 461 U.S. 138 (1983), for her free-speech retaliation claim. Accepting that the *Pickering* analysis applies, Greer was required to show that (1) she was speaking as a private citizen, rather than pursuant to her official duties; (2)

her speech involved a matter of public concern, and (3) her interest in commenting on the matter outweighed the interest of the government, as an employer, in promoting the efficiency of the public services it performs through its employees. The majority holds that the ethics complaint Greer lodged with the Arkansas Department of Education's Professional Licensure Standards Board was not protected speech because it did not involve a matter of public concern. I disagree. Greer acted as a private citizen seeking to expose matters affecting the public interest when she filed the ethics complaint against her son's public school teacher. It is significant that Greer made the ethics complaint after her son had been removed from that teacher's class, indicating a desire to protect other students from undergoing a similar experience.

Although there was clearly an element of personal interest involved, the public always has an interest in whether a public employee—here, a school teacher—is acting unethically in the performance of his or her job. The speech or petitioning at issue need not be exclusively a matter of public concern to satisfy *Pickering*. *E.g.*, *Connick*, 461 U.S. at 149 ("Because one of the questions in [the plaintiff's] survey *touched upon* a matter of public concern, and contributed to her discharge we must determine whether Connick was justified in discharging [the plaintiff].") (emphasis added); *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004) ("[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication."). Greer's complaint was not that of a personal workplace grievance but one emanating from concern over a teacher's alleged disability discrimination and mistreatment of her son. In my view, the ethics complaint constituted speech over a matter of public

19

concern. Further, the circuit court noted a "lack of any articulable non-discriminatory reason for the directive keeping [Greer] from substitute teaching in the entire school district."

Because Greer's claim may move forward under *Pickering*, I would address the analysis employed by the circuit court. To establish a First Amendment retaliation claim, the plaintiff must show (1) she engaged in a protected activity, (2) the government official took adverse action against her that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). As the circuit court correctly held, these elements were met in this case. I would affirm on this point.

Finally, Greer is not entitled to permanent injunctive relief. Irreparable harm is "the touchstone of injunctive relief." *Bentonville Sch. Dist. v. Sitton*, 2022 Ark. 80, at 13–14, 643 S.W.3d 763, 772 (citing *Thurston v. Safe Surgery Ark.*, 2021 Ark. 55, at 19, 619 S.W.3d 1, 13). Further, harm is normally considered irreparable only when it cannot be adequately compensated by money damages or redressed in a court of law. *Id*. Loss of income and damage to one's reputation are not the type of irreparable harm that can justify injunctive relief because even a wrongful and illegal loss of employment can be fully compensated by money damages. *See Doe v. Ark. Dep't of Hum. Servs.*, 357 Ark. 413, 182 S.W.3d 107 (2004) (loss of ability to work was not irreparable harm, and thus, employees were not entitled to preliminary injunction); *see also Kreutzer v. Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980) (a physician who lost a six-figure salary when his employment contract with a hospital was terminated was not entitled to temporary injunctive relief, even if his reputation was

20

damaged and he was forced to relocate to find suitable employment, because the harm he suffered could be compensated by money damages); *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995) (holding that the loss of a job is "quintessentially reparable by money damages"). Accordingly, I would reverse the circuit court's grant of injunctive relief.

I respectfully concur in part and dissent in part.

BAKER, C.J., joins.

*Taylor & Taylor Law Firm, P.A.*, by: *Jennifer Williams Flinn*, *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellants.

*Sutter & Gillham, P.L.L.C.*, by: *Lucien Gillham* and *Luther Sutter*, for appellee.